**BOB JONES UNIVERSITY et al.,**
Plaintiff,

v.

**Donald E. JOHNSON, Administrator of
Veterans Affairs, Defendant.**

**Civ. A. No. 72–1325.**

United States District Court,
D. South Carolina,
Greenville Division.

July 25, 1974.

J. D. Todd, Jr., and O. Jack Taylor, Jr., of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiffs.

Robert N. Dempsey, Civil Rights Div., U. S. Dept. of Justice, and John K. Grisso, U. S. Atty., D. S. C., Columbia, S. C., for defendant.

### ORDER

HEMPHILL, District Judge.

By complaint filed October 24, 1972 Bob Jones University (hereinafter called Bob Jones), an eleemosynary corporation of the State of South Carolina, and Paul L. Wright, a veteran of service to his country and admittedly entitled to veterans' benefits, seek judicial review of a final determination of that sprawling bureaucracy of the federal government known as the Veterans Administration (hereinafter called VA). On September 12, 1972, an Administrative Law Judge of the Department of Health, Education and Welfare, issued a 31-page order terminating the right of eligible veterans seeking education at Bob Jones to receive veterans' benefits. The basis of the decision, which affects eligible veterans and their dependents, was the finding that Bob Jones failed to comply with Title VI of the Civil Rights Act of

1964 [1], particularly Section 601 thereof [2], and the VA regulations [3] implementing the statute requiring non-discrimination in federally assisted programs. The order was to have prospective effect only, applying to veterans whose enrollment was not approved prior to the date of the order. The fact that the men and women had served their country, often with risk of their lives, was ignored, as was any desire one might have to attend Bob Jones as a matter of personal preference or convenience. Thus, freedom was sent to the guillotine in the name of freedom. But such are the times in which we live.

The proceedings below began with the transmittal on February 9, 1972, of a notice of opportunity for hearing by the VA to Bob Jones.[4] The notice was sent as a result of Bob Jones' alleged continuing refusal to sign an assurance of compliance with Title VI, required by the VA Title VI regulations as a condition of federal assistance.[5] An evidentiary hearing followed on June 26, 1972 resulting in the September 12 order terminating all VA assistance to Bob Jones [6] and denying the innocent eligible veterans of future application the right to assistance in attending the school of their choice.

Final action was taken by the defendant Administrator of the VA on November 22, 1972 by his approval of the decision and his transmittal of the requisite information reports to the House and Senate Committees on Veterans Affairs.[7]

On October 24, 1972, the university appealed the Administrator's final decision to this court and was joined in the appeal by Paul L. Wright, suing as veteran and taxpayer. Plaintiff Wright's taxpayer class action (Count Three of the Complaint) was dismissed by the court on May 9, 1973, because plaintiff Wright lacked standing and the requisite adversity required under Article III to constitute a case or controversy.

Bob Jones and plaintiff Wright allege in their complaint that the VA cash benefits used by veterans attending the university do not constitute federal assistance to a university within the meaning of Title VI; that the termination of these benefits is a violation of the Freedom of Association and the Full Exercise Clauses of the First Amendment; that if the VA benefits to veterans are construed as assistance to a university, then such assistance violates the Establishment Clause of the First Amendment.

The Administrator agreed to stay the mandate of the November 22, 1972 order pending a decision on the merits by this court. That agreement is ratified in the January 3, 1973 order of the court.

## UNDISPUTED FACTS

Bob Jones carries on religious [8] and educational activities in Greenville,

---

1. 42 U.S.C. § 2000d, et seq.

2. Section 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides:
   No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected no discrimination under any program or activity receiving Federal financial assistance.

3. 38 C.F.R. § 18.

4. The procedure for the termination of federal assistance for noncompliance with Title VI is set forth in Section 602 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–1 and 38 C.F.R. § 18.8.

5. 38 C.F.R. § 18.4.

6. The entire record of the proceedings below has been certified and sent to the court as the record in this action.

7. 42 U.S.C. § 2000d–1; 38 C.F.R. § 18.8.

8. The religious nature of Bob Jones is reflected in the purpose clause of its Charter:
   The general nature and object of the corporation shall be to conduct an institution of learning for the general education of youth in the essentials of culture and in the arts and sciences, giving special emphasis to the Christian religion and the ethics revealed in the Holy Scriptures; combatting all atheistic, agnostic, pagan, and so-called scientific adulterations of

South Carolina, enrolling approximately 4,500 students at the college level and employing a faculty and staff of 650. It is a fundamentalistic religious school whose educational activities are permeated with its religious beliefs and practices. For example: all university activities, including classroom instruction, are begun and ended with prayer; faculty and students are expected to conform to these practices.

Among Bob Jones' deep religious convictions is the belief that the Bible forbids the intermarriage of the races. Bob Jones has exercised this religious belief since its inception in 1929 by denying admission to unmarried nonwhites and providing for expulsion of students who date members of any race other than their own. The policy is based on the belief that segregation of the races is mandated by God, and that the integration of the student body would lead to interracial marriage thereby violating God's command. This longstanding policy, unlike the other basic precepts of Bob Jones, is not set forth in the university's corporate charter, by-laws, catalogues or other publications.[9]

Since its inception, Bob Jones has consistently refused to accept funds or grants from any government, state, federal or local, because it believes such acceptance would cause the surrender of its religious principles and infringe upon its right to operate the school in harmony with such principles. Defendant asserts that the enrollment of veterans receiving VA benefits constitutes an acceptance of federal funds, by the university to such an extent as to require Bob Jones to change its admissions policy in direct violation of its religious beliefs and practices. Bob Jones disagrees and insists that it is not a recipient of federal financial assistance as contemplated by Title VI of the Civil Rights Act of 1964.

From August 7, 1947, to November 22, 1972, Bob Jones was a VA approved institution for the education of veterans subsidized under the VA administered educational benefits programs. During the 1971–72 academic year, 221 of the 4,509 students received benefits of approximately $397,800 under these federal assistance programs.

The statutory framework for the transmittal of federal funds to eligible veterans requires their enrollment at an approved school.[10] Under the approval procedure, 38 U.S.C. § 1771(a) authorizes the chief executive of each state to select a state agency to certify courses of education as suitable for the education of veterans, utilizing federal criteria.[11] Here the relevant SAA is the South Carolina State Board of Educa-

---

the Gospel; unqualifiedly affirming and teaching the inspiration of the Bible (both the Old and the New Testaments); the creation of man by the direct act of God; the incarnation and virgin birth of our Lord and Saviour, Jesus Christ; His identification as the Son of God; His vicarious atonement for the sins of mankind by the shedding of His blood on the cross; the resurrection of His body from the tomb; His power to save men from sin; the new birth through the regeneration by the Holy Spirit; and the gift of eternal life by the grace of God.

9. The university's exclusionary policy as to race is directed solely at unmarried blacks. Students of other minority races or ethnic groups are not similarly excluded from enrollment. Bob Jones, III, President of Bob Jones University, defends this selective dis-

crimination on the ground that other racial minorities, unlike blacks, do not agitate for interracial marriage which, he believes, is the fundamental thrust of the black movement for desegregation in the United States. Atheists are excluded from enrollment, also, but no racial overtones exist as to this exclusion.

10. The statutory requirements are more fully set forth in the stipulations of the parties in the proceedings below entitled "Statutory Scheme".

11. See 38 U.S.C. § 1775 (Approval of Accredited Courses) and § 1776 (Approval of Non-accredited Courses) which set out the criteria a state approving agency (SAA) must follow in approving accredited and non-accredited courses of study in institutions seeking designation as an approved school for VA educational benefits.

tion. Bob Jones initially applied for approval to the VA in 1947 under previous statutory requirements and was approved effective September 1, 1947. It applied for approval to the SAA in 1952 under current statutory requirements and was an approved school from that time until the VA Administrator's final order of termination issued on November 22, 1972.

In addition to its approval function, the SAA is also required to make inspection and supervisory visits to educational institutions within its jurisdiction pursuant to 38 C.F.R. § 21.4151(b), and the VA is authorized to enter into contracts with the SAA to pay for travel, salary and administrative expenses for such work. 38 U.S.C. § 1774. The South Carolina SAA performs such services for the VA on a reimbursable basis.

An eligible veteran may only receive VA educational benefits while enrolled in an approved program of education at an approved school. The educational benefits he receives are cash payments (maximum now of $175.00) flowing from the VA directly to the veteran on a monthly basis to meet the expenses of subsistence, tuition fees, supplies, books, equipment and other costs. 38 U.S.C. § 1681(a) and § 1731(a).[12] Participating educational institutions, such as Bob Jones, are required to maintain conformity with the federal requirements for approval status and to report to the VA the admission of a veteran and his schedule of courses as well as any changes in his status or hours of credit in approved courses. 38 U.S.C. § 1681, 38 C.F.R. § 21.4203. The VA reimburses participating schools for the administrative expenses incurred in the reporting procedure and in the 1971–72 academic year paid $714.00 to Bob Jones for such expenses. 38 U.S.C. § 1784 and § 1785.

### FINDINGS OF FACT

1. *Bob Jones is a Recipient of Federal Assistance Within the Meaning of Title VI of the Civil Rights Act of 1964*

Section 601 of Title VI expressly prohibits discrimination on grounds of race, color or national origin in "any program or activity receiving Federal financial assistance". 42 U.S.C. § 2000d.[13] The statute also directs the federal agency extending the assistance to effectuate the provisions of Section 601 with respect to "any program or activity, by way of grant, loan or contract other than a contract of insurance or guaranty". 42 U.S.C. § 2000d–1.

Pursuant to this congressional mandate, the VA has published its Title VI regulations, 38 C.F.R. § 18 *et seq.* In applying the regulations, the VA has determined that the educational benefits statutes which it administers are covered by Title VI,[14] and that the educational institutions schooling veterans subsidized under these statutes are recipients of federal financial assistance within the meaning of Title VI.[15] Accordingly, Bob Jones, in common with all other participating schools, is prohibited by Section 601 from discriminating on the basis of race with respect to its federally assisted educational programs.

▮▮ Plaintiffs argue that because the federal cash payments go directly to

---

12. Tuition at Bob Jones for the 1971–72 school year was a minimum of $800.00 per year.

13. Definitions of these and other relevant statutory terms are set forth in the VA Title VI regulations at 38 C.F.R. § 18.13.

14. See Appendix A to 38 C.F.R., at 611.

15. A "recipient" within the meaning of Title VI is not to be confused with the "beneficiary" of federal assistance. The recipient is the intermediary entity whose nondiscriminatory participation in the federally assisted program is essential to the provision of benefits to the identified class which the federal statute is designed to serve.

In this action Bob Jones is a recipient and veterans subsidized by the educational benefits are beneficiaries. The requirements of Title VI cover recipients but not beneficiaries.

the veteran, it is the veteran who is the beneficiary of the VA programs, not Bob Jones. The method of payment does not determine the result; the literal language of Section 601 requires only federal assistance—not payment—to a program or activity for Title VI to attach. The appropriate questions are (1) whether the federally subsidized veteran participates in a "program or activity" and, if so, (2) whether that program or activity is "receiving federal financial assistance". The facts in this case project an affirmative answer as to both questions.

### 2. Bob Jones Conducts a Program or Activity Within the Meaning of Title VI

Admittedly, cash payments made by the federal government which may be utilized without restriction, and which are not dependent upon an individual beneficiary's participation in any program or activity (e. g., veterans' pensions; old-age survivors and disability benefits under Title II of the Social Security Act), are not within the coverage of Title VI because such payments would be assistance to the individual and not to a "program or activity" required by Section 601.[16] However, while payment

is made directly to the eligible veteran under the educational benefits statutes,[17] that assistance is expressly conditioned upon his pursuit of an approved course of study at an approved educational institution. The benefits thus become payable only after prescribed conditions are met. Failure to pursue the educational goal, or unsatisfactory performance, or attendance at an institution which has not been approved, results in loss of benefits. Thus, payments are specifically tied to the beneficiary's participation in an educational program or activity.

### 3. Bob Jones' Educational Program Receives Federal Assistance

█ Several reasons support the proposition that Bob Jones receives federal assistance. First, payments to veterans enrolled at approved schools serve to defray the costs of the educational program of the schools thereby releasing institutional funds which would, in the absence of federal assistance, be spent on the student.[18] Analogously, Bob Jones' participation in the HEW administered National Defense Student Loan program (NSDL)[19] relieved the university from the burden of committing its assets to loans to eligible students.[20]

16. The distinction was explained in a December 2, 1963 letter to Chairman Celler of the House Judiciary Committee (then considering the Title VI bill) by Deputy Attorney General Katzenbach, Hearings before House Judiciary Committee, 88th Cong., 1st Sess., on H.R. 7152, Part IV, at 2773. Accord: Remarks of Senator Humphrey stating that "social security payments, veterans compensation and pensions, civil service and railroad retirement benefits would not be covered," 110 Cong.Rec. 6544. See also remarks of Senator Kuchel to the same effect, 110 Cong.Rec. 6562.

17. Under the Vocational Rehabilitation Act, 29 U.S.C. § 31 et seq., tuition and other payments are made directly to the educational institution unlike the other educational benefits statutes. No veterans currently enrolled at Bob Jones receive benefits under this assistance program.

18. This is particulary applicable to Bob Jones where, during the 1971–72 school

year, 1400 students (but only 11 veterans) received financial assistance directly from the university. See Stipulations 33 and 34 ("Factual Resumé"). Bob Jones receives no denominational or church support and derives its entire support from student payments and gifts.

19. P.L. 85–864, National Defense Education Act of 1958, Title II, as amended, 20 U.S.C. § 421 et seq.

20. Under NSDL, HEW deposits money into a revolving fund, administered by a college, to make possible long term, low interest loans to needy students. The college is required to contribute capital assets to the fund equivalent to one-ninth of the federal input. If the college is financially unable to make the necessary contribution, HEW is authorized to lend it to the college and charge low interest on that loan.

Title VI coverage of a university's educational program does not depend, however, upon a showing that the university has reaped a financial gain, in the sense of a net increment in its assets. Thus, for example, noncapital grants are designed to enable a grantee to undertake new programs or improve the grantee's existing activities at a cost which may be equal to or greater than the federal grant. While the grant may not constitute a net financial benefit to the grantee, it does represent federal financial assistance to the funded program for the purpose of improving services to those whom the grant serves.[21]

A second reason supporting the proposition that Bob Jones receives federal assistance is that the participation of veterans who—but for the availability of federal funds—would not enter the educational programs of the approved school, benefits the school by enlarging the pool of qualified applicants upon which it can draw for its educational program.[22]

Finally, the historical development of federal educational benefits for veterans persuasively indicates that the statutes in question are covered by Title VI. The Servicemen's Readjustment Act of 1944—the GI Bill—was the precursor of the current educational benefits statutes (38 U.S.C. §§ 1774–1776) and provided for direct payment to schools and other vendors of supplies and services for books, tuition and other educational expenses.[23]

Grant programs frequently use institutions as conduits through which federal funds or other assistance pass to the ultimate beneficiaries. Clearly, Title VI attaches to a recipient acting in that capacity. Accordingly, had Title VI been federal law at the time of the GI Bill the participating schools would have been covered by Title VI. The altered method of payment under the current statutes does not change the nature of the program or the basic role of the schools participating in the program. The participation of the schools continues to be critical to the congressional purpose to provide educational opportunities for veterans, and the nondiscriminatory participation of these schools is essential if the benefits of these statutes are to flow to beneficiaries without regard to race.

Whether the cash payments are made to a university and thereafter distributed to eligible veterans rather than the present mode of transmittal is irrelevant, since the payments ultimately reach the same beneficiaries and the benefit to a university would be the same in either event. To argue otherwise would be to suggest that the applicability of Title VI turns on the role of a university as an exchange. It would hold, for example, that the reach of Title VI extends to the VA administered Vocational Rehabilitation Act, 29 U.S.C. § 31, since federal tuition payments are made directly to the schools under that Act, but not to the other VA educational benefits statutes because payments un-

---

21. While hospital insurance benefits for the aged under Medicare, Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, may incidentally increase the net assets of a hospital, Title VI coverage turns not on the fact of benefit or detriment to the hospital in individual cases, but in funding an activity of the hospital through federal payments for services rendered so that its services are made more readily available to the ultimate beneficiaries of the federal assistance program. HEW has construed Title VI to cover Medicare. See Appendix to 45 C.F.R. § 80. That administrative determination is supported by Medicare's legislative history.

See 111 Cong.Rec. 15803, 15813 (1965) (remarks of Senators Ribicoff, Hart and Pastore who played key roles in the adoption of Title VI in 1964).

22. Although the VA payments are not earmarked for school related expenditures, e.g., tuition, all that is necessary for Title VI purposes is a showing that the infusion of federal money through payments to veterans assists the educational program of the approved school.

23. See generally, P. L. 78–346, 58 Stat. 284, 78th Cong., 2d Sess., June 22, 1944.

der those statutes flow to a university through the veterans. No rational distinction with respect to Title VI coverage can be made on this basis.

4. *Title VI Coverage of the Educational Program of Bob Jones is Consistent with the Congressional Purpose Underlying Title VI*

■ Beyond giving the literal language of Section 601 its ordinary meaning in determining its applicability to the VA statutes, it is also important to consider whether such a construction comports with the Congressional purpose underlying Title VI. In the message accompanying the proposed Civil Rights Act of 1963, President Kennedy requested that Congress "pass a single comprehensive provision making it clear that the federal government is not required under any statute, to furnish any kind of financial assistance—by way of grant, loan, contract, guaranty, insurance or otherwise—to any program or activity in which racial discrimination occurs."[24] In the absence of statutory language or legislative history which would clearly seem to exclude Title VI coverage of the VA educational programs in question, the broad language of Title VI should be interpreted in the remedial context in which the Title was presented to Congress by the Kennedy Administration. Under such circumstances narrow readings of Title VI coverage are inappropriate. See *Miller v. Amusement Enterprises, Inc.,* 394 F.2d 342 (5th Cir. 1968). Nothing in the congressional debate on what became the Civil Rights Act of 1964 compels exclusion of these statutes from Title VI coverage. The sweeping language of Section 601 suggests otherwise. Since the VA payments to veterans are conditioned upon participation in an approved program of education, it is relevant to the Congressional purpose to ensure that such programs be conducted on a nondiscriminatory basis *so that no eligible veteran is excluded from participation.* But beyond this consideration, the legislative history of Title VI indicates a Congressional concern that the federal government's responsibility was rooted in the constitutional guarantee that all citizens are entitled to the equal protection of the law. As Congressman Celler[25] observed:

If the Government, through such an arrangement [financial assistance], can be said to have "elected to place its power, prestige, and property behind the admitted discrimination," the courts may deem it a "joint participant" and hold the segregation or discrimination unlawful. Burton v. Wilmington Parking Authority, 365 U.S. 715, 724–725 [81 S.Ct. 856, 6 L.Ed.2d 45] (1961). In such circumstances, the Government may be under a duty to take affirmative action to preclude racial segregation or discrimination by private entities in whose activities it is a participant.[26]

The concern on the part of a key sponsor of Title VI that Congress had not only the power but the constitutional duty to act against discrimination in federal assistance programs, lends further support to an expansive reading of Title VI coverage.

5. *Federal Assistance to Bob Jones Does Not Contravene the Religion Clauses of the First Amendment*

A. *Federal Assistance to Bob Jones Through Operation of The VA Educationsl Benefits Statutes is Consistent With the Requirements of the Establishment Clause*

■■ Plaintiffs argue here, as they did below, that if the VA educational

---

24. House Document No. 124, 88th Cong., 1st Sess., at 12. The final version of the bill excluded from coverage contracts of insurance and guaranty. 42 U.S.C. § 2000d–4.

25. Congressman Celler, Chairman of the House Committee on the Judiciary, introduced the Administration bill, H.R. 7152.

26. 110 Cong.Rec. 1464–1465 (daily ed., June 31, 1964).

benefits statutes are construed to confer assistance, i.e., state aid in the constitutional sense, to Bob Jones within the meaning of Title VI, then the VA payments to veterans at the university and all other religiously affiliated schools constitute a continuing violation of the First Amendment's Establishment Clause. Plaintiffs erroneously believe the same standard of constitutionality is applicable under the Establishment Clause and the Equal Protection Clause. The historic and divergent development of these constitutional provisions does not support such a reading. The recent Supreme Court decision in *Norwood v. Harrison,* 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973) [27] is dispositive. There the Supreme Court held that a Mississippi state program loaning textbooks to students in public and private schools without reference to the racial policies of the private schools violated the Equal Protection Clause. In distinguishing *Board of Education v. Allen,* 392 U.S. 236, 8 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), which had, under the Establishment Clause, upheld such textbook assistance to students at private sectarian schools, the Court observed that:

. . . our constitutional scheme leaves room for "play in the joints" to the extent of cautiously delineated secular governmental assistance to religious schools, despite the fact that such assistance touches on the conflicting values of the Establishment Clause by indirectly benefiting the religious schools and their sponsors.

In contrast, although the Constitution does not proscribe private bias, it places no value on discrimination as it does on the values inherent in the Free Exercise Clause . . . . However narrow may be the channel of permissible state aid to sectarian schools, [citations omitted] it permits a greater degree of state assistance than may be given to private schools which engage in discriminatory practices that would be unlawful in a public school system. 413 U.S. 455, 469, 93 S.Ct. 2804, 2813, 37 L.Ed.2d 723, 734.[28]

In short, a more stringent standard is applied by the courts in determining whether there has been unconstitutional state aid in the context of a case arising under the Equal Protection Clause than in one arising under the Establishment Clause. In the preceding sections this court has found that Bob Jones is a recipient of federal assistance given the nature of the VA programs in question. That this is so does not bring the VA payments to veterans at Bob Jones or other religiously affiliated schools into conflict with the Establishment Clause simply because the payments may be said to assist the sectarian school. While *Norwood* makes this clear, previous Supreme Court decisions suggested the same conclusion:

. . . the Court has never denied that "free books make it more likely

---

27. Free textbooks, like tuition grants, directed to private school students are a form of financial assistance inuring to the benefit of the private schools themselves. An inescapable educational cost for students in both public and private schools is the expense of providing all necessary learning materials . . . if the school engages in discriminatory practices the state by tangible aid in the form of textbooks thereby gives support to such discrimination. 413 U.S. 455, 463, 93 S.Ct. 2804, 37 L.Ed.2d 723

28. Compare Green v. Connally, 330 F.Supp. 1150 (D.D.C.1971), aff'd. mem. sub nom, Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971) and McGlotten v. Con-

nally, 338 F.Supp. 448 (D.D.C.1972) with Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) ; *see also,* Bob Jones University v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). Plaintiffs distinguish Norwood on the basis that its policy of racial exclusion is (1) of long duration in contrast to the recent establishment of segregationist academies, and (2) religiously based. There is no judicial support for the proposition that unlawful discrimination accretes constitutionality by virtue of its duration, nor for the asserted principle that religiously based racism is immune from the prescriptions of constitutional law.

that some children choose to attend a sectarian school," *ibid.* [*Board of Education v. Allen,* supra, 392 U.S. at 392, 88 S.Ct. 1923], just as in other cases involving aid to sectarian schools we have acknowledged that the various forms of state assistance "surely aid those (religious) institutions . . . in the sense that religious bodies would otherwise have been forced to find other sources from which to finance these services". Tilton v. Richardson, 403 U.S. 672, 679, 91 S.Ct. 2091, 2096, 29 L.Ed.2d 790 (1971). Plainly, religion benefits indirectly from governmental aid to parents and children; nevertheless "[t]hat religion, may indirectly benefit from government aid . . . does not convert that aid into an impermissible establishment of religion." Lemon v. Kurtzman, 403 U.S. 602, 664, [91 S.Ct. 2105, 2136, 29 L.Ed.2d 745] (1971) (opinion of White, J.).[29]

Plaintiffs argue that the application of Title VI to Bob Jones would involve the federal government in impermissible entanglement with religion. However the entanglement doctrine merely expresses the Supreme Court's view that federal assistance which requires the state to establish elaborate surveillance mechanisms designed to ensure that the religious functions—as distinguished from the secular functions—of the grantee are not subsidized by the state aid, contravenes the Establishment Clause. See, e.g., *Walz v. Tax Commission,* supra, 397 U.S. at 674–76, 90 S.Ct. 1409; *Lemon v. Kurtzman,* 403 U.S. 602, 614, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Tilton v. Richardson,* 403 U.S. 672, 684–89, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971). Here, the VA does not seek to perform the delicate task of distinguishing the secular from the religious functions of plaintiff Bob Jones. The responsibility of the VA under Title VI is limited to ensuring that recipients comply with that Title's nondiscrimination requirements. Accordingly, the entanglement doctrine has no application to the facts of this case.

B. *Federal Assistance to Bob Jones Through Operation of The VA Educational Benefits Statutes is Consistent With the Requirements of the Free Exercise Clause And the Right of Association*

██ In extending financial assistance, Congress unquestionably has plenary authority to impose such reasonable conditions on the use of granted funds or other assistance as it deems in the public interest. See, e.g., *United States v. San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940); *Oklahoma v. Civil Service Commission,* 330 U.S. 127, 142–44, 67 S.Ct. 544, 91 L.Ed. 794 (1942); *United States v. Frazer,* 297 F.Supp. 319, 323 (M.D.Ala.1968); *United States v. Sumter County School District,* 232 F.Supp. 945 (E.D.S.C.

**29.** Norwood, supra, 413 U.S. 455, 464, n. 7, 93 S.Ct. 2804, 2810, n. 7, 37 L.Ed.2d 723, 730–31, n. 7. The line between permissible assistance and that prescribed by the Establishment Clause was most recently restated by the Supreme Court in Committee for Public Education and Religious Liberty v. Nyquist, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973), and Sloan v. Lemon, 413 U.S. 825, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973), where New York and Pennsylvania state tuition grant programs reimbursing parents of children in nonpublic schools were held to violate the Establishment Clause. In Nyquist, supra, 413 U.S. at 772, 93 S.Ct. at 2965, 37 L.Ed.2d, at 962–63, the Supreme Court, in reviewing its previous decisions in this area, stated that:

Taken together, these decisions dictate that to pass muster under the Establishment Clause the law in question first must reflect a clearly secular legislative purpose, e.g., Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), second, must have a primary effect that neither advances nor inhibits religion, e.g., McGowan v. Maryland, supra [366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393]; School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), and, third, must avoid excessive government entanglement with religion, e.g., Walz v. Tax Comm'n, supra. The VA assistance to Bob Jones transgresses none of the above limiting principles.

1964). *Cf. Gardner v. Alabama*, 385 F. 2d 804 (5th Cir. 1967), cert. denied, 389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839 (1968). The enactment of Title VI exemplified the use of that legislative authority and the VA's request of Bob Jones for a Title VI assurance of compliance was an act of conformity with the VA's congressional mandate. While the plaintiffs do not challenge this general proposition, they seek a unique status of immunity from Title VI based, not on the legislative history of Title VI, but on the First Amendment's Free Exercise Clause.

█ Plaintiffs insist that the Free Exercise Clause provides an absolute right to Bob Jones to exclude black students from admission. The Constitution provides no absolute protection to invidious discrimination in the private sector. See *Norwood*, supra, 413 U.S. 455, 470, n. 10, 93 S.Ct. 2804, 2813, n. 10, 37 L. Ed.2d 734, n. 10. See also *Grier v. Specialized Skills, Inc.*, 326 F.Supp. 856 (W.D.N.C.1971) (held a proprietary barber school could not exclude black students); *Gonzales v. Fairfax-Brewster, Inc.*, 363 F.Supp. 1200 (E.D.Va.1973) (held that a private school could not refuse to admit blacks). There is no judicial support for the proposition that the First Amendment protection for the free exercise of religion is any more inviolable where it results in racial discrimination, than the First Amendment's secular protection of freedom of association which results in similar privately sponsored racial exclusion. The courts have not hesitated to reject the argument of freedom of association as a defense to an otherwise valid civil rights action.

In this action, however, there is no direct challenge mounted against continuation of Bob Jones' racist policy. Here the federal government is seeking only to terminate its support of such discrimination pursuant to a congressional mandate.

That the Constitution may compel toleration of private discrimination in some circumstances does not mean that it requires state support for such discrimination. Norwood, supra, 413 U.S. 455, 463, 93 S.Ct. 2804, 2809, 37 L.Ed.2d 723, 730.

█ It is clear that the Free Exercise Clause cannot be invoked to justify exemption from a law of general applicability grounded on a compelling state interest. *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (vaccination can be required over religious objection); *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878) (religious belief does not justify polygamy); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1954) (state can prohibit children from selling literature at night despite religious purpose); Compare *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (state's claim that compulsory school attendance to age 16 for Amish children insufficiently compelling). As the Supreme Court observed in *Yoder*, supra, at 215, 92 S.Ct. at 1533.[30]

> The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can over-balance legitimate claims to the free exercise of religion.

The national policy against race discrimination as reflected in our body of laws is one such interest "of the highest order." As the court observed in *Green v. Connally*, supra, at 1167:

> There is a compelling as well as a reasonable government interest in the interdiction of racial discrimination which stands on highest constitutional

---

30. The court held that the free exercise of Amish religious beliefs would be endangered by the uniform application of Wisconsin's compulsory school attendance law beyond the elementary grades; in balancing the interests of the state against the "legitimate religious belief[s]" *Id.*, at 214, 92 S.Ct. 1526, of the Amish, the Court took note of the informal education provided by the Amish for their children in lieu of public secondary education. To equate this modest accommodation to a racially neutral religion having minimal impact on public policy with the facts of this case would be inappropriate.

ground, taking into account the provisions and penumbra of the Amendments passed in the wake of the Civil War. [Citations omitted]. That government interest is dominant over other constitutional interests to the extent that there is complete and unavoidable conflict.

█ Another dimension as to the federal government's Fifth Amendment responsibilities exists here. If this court were to hold that the VA payments to veterans do not constitute assistance to Bob Jones, it might be contended that the Fifth Amendment prohibits the government's payments to veterans attending the university. *Each time the VA approves an application for benefits to be used at Bob Jones, it extends a benefit to whites which it cannot grant to some blacks.* While this is an outcome of private discrimination, it is clear that no only is the government prohibited from authoring state sponsored discrimination, it is also prohibited from acquiescence in the discriminatory practices of public or private entities which participate in the federal program

> It is . . . axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish. Lee v. Macon County, 267 F. Supp. 458 (M.D.Ala.1967).

See also *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); *CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920 (2d Cir. 1968). The court should avoid a statutory interpretation which raises constitutional questions if there is a reasonable reading of the statute which does not raise those issues.

█ Apart from the statutory requirements of Title VI, the federal government cannot, consistent with the Due Process Clause of the Fifth Amendment, provide direct grants-in-aid to public or private entities which discriminate on the basis of race; *Gautreaux v. Romney*, 448 F.2d 731 (7th Cir. 1971); *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959 (4th Cir. 1963),

*cert. denied*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); nor extend indirect support through tax exemptions; *Green v. Connally*, 330 F.Supp. 1150 (1971) (dicta) (three-judge court), *aff'd mem sub nom., Coit v. Green*, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971); *McGlotten v. Connally*, 338 F. Supp. 448 (D.D.C.1972) (three-judge court). Moreover, like state governments, the federal government could not provide indirect assistance such as tuition grants to students attending private segregated schools. See *Bolling v. Sharpe*, 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

### CONCLUSION

For the reasons stated by the court, the decision of the Administrative Law Judge is affirmed and the final action of defendant VA Administrator is approved. The court refuses the injunctions sought by plaintiffs.

Complaint dismissed.

And it is so ordered.