September 27, 1977

## 77-55 MEMORANDUM OPINION FOR THE SOLICITOR OF THE DEPARTMENT OF LABOR

### Dues-Paying Practices of Private Clubs— Discriminatory Practices

This responds to your request for our opinion concerning the payment of fees for membership in private organizations. You request clarification of one part of the December 7, 1976, opinion letter of former Assistant Attorney General Antonin Scalia regarding this matter,[1] and you have enclosed for our review a new draft of instructions to the compliance agencies.

1. The portion of Mr. Scalia's letter that you question reads as follows:

> Or to take what is perhaps a more realistic example: In a city whose luncheon clubs include a "Professional Women's Club," a "Businessmen's Club" and a "Men's and Women's Downtown Club," it would not necessarily constitute discrimination on the part of an employer to pay dues for all three.

You interpret the quoted sentence as saying that—

> . . . all that a contractor is required to do to remedy the prohibited discrimination involved in the payment of dues to discriminating clubs is to ensure that each of its employees eligible for such fees is given an opportunity to join a club. * * *

Our interpretation of Mr. Scalia's statement differs from yours.

The example was intended to illustrate the point, stated earlier in Mr. Scalia's letter, that "a policy which affords *each* employee an opportunity to join one . . . [private] organization [emphasis in original] would [not] necessarily be discriminatory merely because some of the organizations selected were limited to members of a particular sex, a particular nationality . . . , a particular race, or a particular religion." The letter did not say that such a policy would always comply with Execu-

---

[1] That letter is reprinted as an appendix hereto.

tive Order 11246. The general idea suggested (with which we agree) is that there may be circumstances in which such a policy would not violate the Executive order. Similarly, the hypothetical case described by Mr. Scalia was merely an example, and in stating that such a situation would "not necessarily constitute discrimination," he did not rule out the possibility that, depending on all the circumstances, it could be discriminatory. In short, we do not read Mr. Scalia's opinion as reviving the "separate but equal doctrine."

2. The draft memorandum that you enclosed sets forth a general rule concerning payment of dues and then lists two types of exceptions. The general rule is that—

> . . . payment by a contractor of dues to an organization which limits its membership based on race, color, religion, sex, or national origin is a discriminatory practice proscribed by Executive Order 11246 and the implementing regulations.

One of the exceptions is that a contractor may pay fees to—

> . . . organizations in which membership does not confer a business or professional advantage and whose primary purpose is charitable, religious, or community service.

The other exception permits payment of fees to "organizations whose primary purpose is to improve the employment positions of minorities and women."

We have certain reservations concerning the approach taken in the draft. Apart from these two exceptions, the draft does not provide for any means whereby an employer may demonstrate that its dues-payment practices (involving some discriminatory organizations) have not resulted in a business or professional advantage having a discriminatory impact upon its hiring, promotion, commissions, bonuses, or other benefits. Because of the absence of some mechanism for an employer to attempt to prove the nondiscriminatory effect of its policy, we question whether this approach is sufficiently flexible.

For example, a particular employer might have a dues-paying policy applicable to all managers. Some covered by that policy select discriminatory organizations, such as a country club or a downtown club. Assume that, for many years, the employer has had an effective affirmative action program. Its present (and past) employment statistics show that significant numbers of women and members of minority groups are managers and that women and minority-group managers have compensation and authority comparable to that of other managers who are their contemporaries. Promotions are and have been made on a nondiscriminatory basis. In these circumstances, it seems doubtful to us that, because of its dues-paying policy alone, the employer would be in violation of Executive Order 11246. Perhaps, such situations are not likely, but, because they are possible, we suggest that you consider a different approach.

Our recommendation is that you consider stating in the instructions to compliance agencies that there is a rebuttable presumption that a contractor's payment of dues to a discriminatory organization violates the Executive order.[2] Under this approach, the contractor would have the opportunity to show that its policy and the effects of its policy (on hiring, promotions, sales, commissions, bonuses, or other compensation, etc.) are nondiscriminatory. This is the essential point made in Mr. Scalia's letter. A dues-payment policy that results in employer payments to clubs that discriminate will not always and invariably constitute employment discrimination, and the employer should be allowed to demonstrate that its dues policy has had no such discriminatory consequence. While this may be a formidable evidentiary task for the employer, we believe that the employer may not be foreclosed from endeavoring to make that showing. In our view, it would be difficult, as a matter of law, to justify an interpretation of the Executive order denying employers the opportunity to rebut the presumption. The order, by its terms, is aimed at assuring that Government contractors will not discriminate. Unless the employer can be found to be maintaining a dues-payment policy that does have the effect of discrimination with respect to employment matters, we do not think that policy may be challenged simply because it allows payments to private clubs that are discriminatory.

The Civil Rights Division concurs in the views expressed in this letter.

JOHN M. HARMON  
*Assistant Attorney General*  
*Office of Legal Counsel*

---

[2] The instructions could still set forth certain general exceptions. The present draft's exception for organizations, which is intended to improve the employment situation of minorities and women, seems proper. Regarding the other exception included in the present draft, we question whether it should be limited to groups whose primary purpose is charitable, religious, or community service. There may be some organizations that are purely social but do not "confer a business or professional advantage." If so, it would seem that such organizations could appropriately be included within the exception.

# APPENDIX

December 7, 1976

## MEMORANDUM FOR THE SOLICITOR DEPARTMENT OF LABOR

### Dues-Paying Practices of Private Clubs

This responds to your request for our opinion regarding the proposed memorandum of your Office of Federal Contract Compliance Programs (OFCCP) concerning payment of fees for membership in private organizations. The basic position expressed in the memorandum is that any payment by a Government contractor of membership fees for employees in organizations whose membership practices involve "discrimination" on the basis of race, color, religion, sex or national origin would violate Executive Order 11246 and OFCCP's implementing regulations.

Our conclusions on the issues raised may be summarized as follows: Title VII's exemption for the employment practices of certain private membership clubs does not govern the present matter. Nor does the public accommodations law's exemption for private clubs. Neither those statutes nor the Constitution would bar the Government from prohibiting payment of dues by a contractor in a case where such a prohibition is needed to remedy discrimination in regard to promotions, compensation, or other aspects of employment. However, in our view, the OFCCP memorandum's basic position is too broad. In some circumstances, the payment of dues to private groups which limit membership on the basis of race, color, religion, sex, or national origin may violate the Executive order or the regulations; in other circumstances, however, such payment may be entirely proper and not result in any pro-. scribed discrimination.

1. One question raised in your request is whether OFCCP must be guided by the exemption of certain *bona fide* private membership clubs from the coverage of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b)(2) (1975 Supp.). That exemption, contained in the definition of "employer," means that the employment practices of such clubs are not subject to Title VII. We do not believe that that exemp-

223

tion affects the authority of OFCCP to apply the proposed ruling to the employment practices of contractors covered by the Executive order. That involves no attempt to regulate the employment practices of clubs—which is all that the exemption prohibits.[1]

2. We reach the same conclusion regarding the relevance of the exemption of private clubs from the coverage of the public accommodations law, Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(e). The present matter does not involve any challenge to the membership practices of the clubs; they may continue unchanged.[2] Here, the relationship of Federal contractors to clubs with discriminatory memberships is involved; no exemption of the clubs themselves from direct regulation affects that issue. 42 U.S.C. § 2000a(e) clearly acknowledges the distinction between regulating the clubs and regulating the relations of other entities to the clubs—since it excludes from the exemption club facilities made available to a covered establishment.

3. We do not believe that the Constitution bars OFCCP or agencies from affecting the payment of dues by Federal contractors to private organizations where such payment would result in discriminatory employment. It is well established that the right of association, however broad its sweep, does not prohibit the Federal Government from insisting upon the application of equal protection standards in many fields, including that of Federal contracting. *Cf., Oklahoma* v. *Civil Service Commission,* 330 U.S. 127, 143 (1947); *Contractors' Association* v. *Schultz,* 442 F. 2d 159, 170 (3d Cir.), *cert. denied,* 404 U.S. 854 (1971); *Bob Jones University* v. *Johnson,* 396 F. Supp. 597, 606 (D. S.C. 1974), *aff'd per curiam,* 529 F. 2d 514 (1975).

Whether the current Executive order is based on the President's power under the Constitution or statutory provisions or both, it is unquestionable that the order is valid. *See, e.g., Farmer* v. *Philadelphia Electric Co.,* 329 F. 2d 3, 8 (3d Cir. 1964); *Contractors' Association* v. *Schultz, supra,* at 170. If a dues-paying arrangement results in denial of equal employment opportunity, then the Order would afford a basis for remedial action. This conclusion, in our opinion, is not altered by the decision in *Washington* v. *Davis,* 426 U.S. 229 (1976), which speaks to the conduct which the Constitution proscribes rather than to the conduct which the Government may take into account in its contracting regulations.

4. Your letter states that one of the main premises for the proposed ruling of OFCCP is

---

[1] Of course, in the rare event that a club is also a Government contractor, the club's employment practices would be subject to Executive Order 11246. This is clearly not the situation to which the present inquiry is addressed; and, in any case, there is, in our opinion, no reason to read into the Executive order the Title VII exemption of the employment practices of private membership clubs.

[2] We do not here reach the question of the validity of any Congressional attempt to change the *Cf., Cornelius* v. *B.P.O.E.,* 382 F. Supp. 1182, 1201 (D. Conn., 1974); *Runyon* v. *McCrary,* 427 U.S. 160 (1976).

"that an employer's policy of paying membership dues to its employees has a disparate impact on protected groups in that it segregates employees on the basis of their race, color, sex, religion or national origin as to the places where they may transact business and thereby affects their promotion and advancement potential."

Without questioning the proper application of this thesis to certain factual situations, it does not seem to be of such uniform validity to warrant the categorical prohibition which provides the basis for the memorandum. Although some clubs are used substantially for the transaction of business or for making business contacts, we see no grounds for assuming that this is universally so. It is our understanding, for example, that many community-service clubs (some of which are fraternal organizations) are not organizations in which any significant amount of business is transacted or acquired; and the practice of a company to pay for membership in such an organization may be prompted—if by any commercial motive at all—only by the desire to have the company appear as a "good citizen" of the community through participation of many of its employees in good works, without any care or attention to which particular employees are responsible for this reputation.

Moreover, even if it were established that all private club membership appreciably affects promotion potential, or even if such effect were not considered necessary in order to constitute a violation, on the theory that the payment of membership fees is a special emolument available only to certain employees, it is not apparent why a policy which affords *each* employee an opportunity to join one such organization would necessarily be discriminatory merely because some of the organizations selected were limited to members of a particular sex, nationality, race, or religion. If, for example, a firm were to offer to pay, for each of its employees at a certain level, membership dues in one "worthwhile community organization," which it interprets to include, among others, the YMCA, the YWCA, the Jewish Community Center, the Knights of Columbus, the German-American Club, the Hibernian Society, and the National Council of Negro Women, it is far from self-evident that any discrimination prohibited by Executive Order 11246 or the implementing regulations could be found. Or to take what is perhaps a more realistic example: In a city whose luncheon clubs include a "Professional Women's Club," a "Businessmen's Club," and a "Men's and Women's Downtown Club," it would not necessarily constitute discrimination on the part of an employer to pay dues for all three.

We now turn to the specific provisions of existing regulations upon which the memorandum relies for its categorical exclusion: Two provisions of Revised Order No. 4, which prescribes the contents of affirmative action programs refer to the administration of all "company sponsored . . . programs" without discrimination, and to the need to assure the participation of minorities and women in "company sponsored ac-

225

tivities or programs." 41 CFR § 60–2.20(a)(4) and § 60–2.23(b)(9). The OFCCP memorandum regards these descriptions as disapproving contractors' payment of all club membership fees of the type here at issue. We do not believe this generalization is justified. It is possible to view an employer's over-all scheme of paying membership dues as a "company sponsored program"; and any improper discrimination as to whose dues will be paid (e.g., the payment of men's dues only) would be a violation. Assuming, however, that the dues-paying program is nondiscriminatory, the fact that some employees choose to join men's or women's clubs would place the employer in violation of the provisions only if the clubs themselves could be considered "company sponsored activities or programs." We do not interpret the OFCCP memorandum as adopting this position—and it would seem to us an unreasonable reading of the regulations, except perhaps in the case of a club supported so substantially by one particular firm as to constitute a sort of "company club." Thus, no general conclusion of violation of these provisions seems possible, and analysis of the specific circumstances is necessary.

Another provision cited in the memorandum is 41 CFR § 60–20.3(c), which states that an employer "must not make any distinction based upon sex in employment opportunities. . . ." The conclusion that all payment of memberships in clubs limited to men or women violates this provision assumes (1) that the club in question does provide significant business opportunities, and (2) that the employer does not pay for membership in another club, which includes the other sex and which provides equivalent business opportunities. As discussed above, neither of these assumptions is self-evidently correct. Once again, analysis of the specific circumstances is necessary.

Finally, the memorandum refers to the guidelines regarding discrimination based on religion or national origin, 41 CFR §§ 60–50.1, and 50.2. Our views here are similar to those just expressed with respect to sex discrimination. It does not necessarily constitute a violation of these provisions to pay dues in organizations composed of persons of a particular religion or national origin, so long as other employees are given the opportunity of joining, at company expense, other clubs which provide equivalent benefits. The injunction against discrimination does not mean particular religious and ethnic groups cannot be accorded special treatment, so long as over-all benefits are accorded on a nondiscriminatory basis. This is evident from several provisions within § 60–50 itself: § 60–50.2(6) encourages "establishment of meaningful contracts with religious and ethnic organizations and leaders . . . "; § 60–50.2(8) encourages "use of the religious and ethnic media for institutional and employment advertising"; and § 60.50.3 states that "an employer must accommodate to the religious observances and practices of an employee." It is positively consistent with these provisions for an

226

employer to subsidize membership in various religious and ethnic organizations.

5. In conclusion, our main difficulty is the generality of the approach and its apparent failure to take into consideration the various types of circumstances which may arise. Please let me know if we can be of any further assistance regarding this matter.

ANTONIN SCALIA
*Assistant Attorney General*
*Office of Legal Counsel*
