GROVE CITY COLLEGE, Individually and on behalf of its students, Marianne Sickafuse; Kenneth J. Hockenberry; Jennifer S. Smith, and Victor E. Vouga, Plaintiffs,

v.

Patricia HARRIS, Secretary of the United States Department of Health, Education and Welfare; Roma J. Stewart, Director of the United States Office for Civil Rights, Defendants.

Civ. A. No. 78–1293.

United States District Court, W. D. Pennsylvania, Civil Division.

March 10, 1980.

As Amended June 26, 1980.

David W. Ketler, Grove City, Pa., David M. Lascell, Rochester, N. Y., for plaintiffs.

Mark C. Rutzick, U. S. Dept. of Justice, Washington, D. C., F. Allen McDonogh, Dept. of Health, Education & Welfare, Atlanta, Ga., for defendants.

## PRELIMINARY STATEMENT, FINDINGS OF FACT, CONCLUSIONS OF LAW, DISCUSSION AND ORDER

SIMMONS, District Judge.

### Preliminary Statement

This litigation was generated by the initiation of a compliance proceeding against

Plaintiff, Grove City College alone, (hereinafter referred to as "College") under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) and the regulations of the Department of Health, Education and Welfare, (hereinafter referred to as "HEW") 45 C.F.R. Parts 80, 81 and 86 as promulgated by the then Secretary of HEW, Joseph Califano.

In July of 1977, Secretary Califano requested that the College execute HEW Form 639A, which is captioned, "*Assurance of Compliance with Title IX of the Education Amendments of 1972, and the Regulation Issued by the Department of Health, Education and Welfare in Implementation Thereof*". (See Exhibit "A" to Plaintiffs' Complaints for a copy of said form)

HEW insisted that the College must execute Form 639A, and contended that since a good number of the College's students received Basic Educational Opportunity Grants, (hereinafter referred to as "BEOG") and Guaranteed Student Loans, (hereinafter referred to as "GSL") and because these programs were financed with Federal funds and were used by the students to defray educational expenses, that the College was caused to be a "recipient" of Federal financial assistance as that term is defined in 45 C.F.R. Part 86, and the College was therefore duty-bound to execute Form 639A.

Further, the Secretary contended that if the College refused to execute this form, the College and the students at the College would no longer be allowed participation in the GSL and BEOG Programs pursuant to § 902 of Title IX (Title 20 U.S.C. § 1682). There was *no* allegation·or proof offered by HEW that the College was, in fact, guilty of discrimination on the basis of sex in any manner whatsoever.

The College contended that it was not a recipient of Federal financial assistance by virtue of the GSL and BEOG Programs, and to the extent that HEW's regulations deemed the College to be such a recipient, they were an invalid extension of the statute, and that in any event, the HEW regulations were overbroad because they were not limited to regulating those programs that received Federal financial assistance. In addition, the College claimed that HEW has promulgated regulations which, as applied to Plaintiffs, exceed the scope of §§ 901 and 902 of Title IX, (20 U.S.C. §§ 1681, 1682) and that said regulations of HEW as the same were applied to the College, violate the First and Fifth Amendments to the Constitution of the United States. The College, on the basis of conscience and principle, refused to execute the *Assurance of Compliance with Title IX.*

Thereupon, HEW initiated a compliance proceeding, and subsequently, an administrative hearing was held before HEW Administrative Law Judge, Albert Feldman, on March 10, 1978, in Philadelphia, Pennsylvania. It is important to note that only the College was named as a respondent, and none of the College's students were parties and they were not otherwise represented at the administrative proceeding even though over three hundred of them had a direct interest in the outcome of that hearing.

In his opinion, dated September 18, 1978, Judge Feldman did not address the College's constitutional arguments, ruling that his authority was restricted to determining whether the College complied with HEW's regulations. Significantly, however, Judge Feldman stated on page 9, of his decision that:

"There was not the slightest hint of any failure to comply with Title IX save the refusal to submit an executed assurance of compliance with Title IX. This refusal is obviously a matter of conscience and belief."

And, Judge Feldman further wrote on page 9, of his decision:

"There is, very clearly, given to the Director a total and unbridled discretion to require any certificate of compliance that he may desire, whether the same be reasonable, or, to reasonable men, unreasonable. There are no guidelines. There is no necessary continuity, as from one Director to a successor Director whose opinions as to what constituted compliance might be totally different from those of his predecessor."

"The Administrative Law Judge is not persuaded by any of the cases cited that this authority in the regulations has been struck down. Under the circumstances, the regulations being binding upon the Administrative Law Judge, he must rule in accordance therewith. The Director is given unlimited discretion so that the Administrative Law Judge has no authority to rule and is powerless to rule either that the regulations are unconstitutional or that the regulations exceed the statutory authority."

See in the matter of *Grove City College*, Docket No. A–22, P. 9 (HEW Administrative Proceeding, Sept. 15, 1978). (Initial Decision)

Since the College conceded that it did not sign the Assurance of Compliance required by the regulations, Judge Feldman found that the College was not in compliance. He, therefore, ordered that students who attended the College were ineligible to receive BEOG's or GSL's, and the following is the full text of the Final Order as drafted by Judge Feldman, and as adopted by the Secretary:

"IT IS HEREBY ORDERED:

1. Federal financial assistance administered by the Department of Health, Education and Welfare under the following authorization is to be terminated and refused to be granted to the respondent institution:

a) Basic Education Opportunity Grant Program, 20 U.S.C. § 1070a.

b) Guaranteed Student Loans Program, 20 U.S.C. § 1071 *et seq.*

2. Additional Federal financial assistance which the respondent institution would be eligible to receive, either from the Department or through the Commonwealth of Pennsylvania, but for its noncompliance with Title IX, is to be refused to be granted.

3. This termination and refusal to grant or continue Federal financial assistance shall remain in force until the respondent institution corrects its noncompliance with Title IX and satisfies the Department that it is in compliance.

4. This initial Decision and Order shall become final unless, within twenty (20) days after mailing the initial Decision and Order, either party submits exceptions to the Reviewing Authority in accordance with 45 C.F.R. § 81.102.

/s/  ALBERT P. FELDMAN
Albert P. Feldman
Administrative Law Judge

Date: September 15, 1978"

Pursuant to 45 C.F.R. § 81.104, Judge Feldman's Order became final on October 14, 1978. On November 29, 1978, Plaintiffs commenced this suit.

In the action before this District Court, the Plaintiffs are Grove City College, and four of its students, namely, Marianne Sickafuse, Kenneth J. Hockenberry, Jennifer S. Smith and Victor E. Vouga.

The Plaintiffs allege that their action arises under Title IX of the Educational Amendments of 1972, 86 Stat. 373, as amended, 88 Stat. 1862 (1974), 90 Stat. 2234 (1976), 20 U.S.C. § 1681 *et seq.* ("Title IX"). Plaintiffs further allege that this Court has jurisdiction for review pursuant to Title IX, 20 U.S.C. § 1682; The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; The Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

The Plaintiffs request this Court to find that the aforestated Order of the Secretary of HEW requiring the College to execute the Assurance of Compliance or in the alternative suffer the termination of the BEOG and GSL benefits to the College's students, including the individual Plaintiffs, is null and void and of no legal effect.

In due course, HEW filed an Answer to the Complaint filed by the Plaintiffs in this case.

The Plaintiffs responded by filing what their attorneys have described as a "Motion for Judgment on the Pleadings", with supporting affidavits pursuant to Rule 12 of the F.R.C.P., but this Court will treat the Motion as one for Summary Judgment pursuant to Rule 12 c and Rule 56 of F.R.C.P.

The Defendant HEW thereupon filed a cross-motion for Summary Judgment.

There are no disputed and/or triable questions of material fact noticed by this Court, the parties have briefed and argued their respective points, and the matter is ripe for a decision by this Court.

The sub-issues of law that must be decided in order to determine the validity of the administrative Order in question are as follows:

1) Does this Court have jurisdiction to presently adjudicate this case?

2) Does Title IX of the Educational Amendments of 1972, Title 20 U.S.C. §§ 1681 *et seq.* apply to Plaintiff Grove City College and/or to the four individual Plaintiffs in this case, and if so, to what extent?

3) Do HEW's regulations (45 C.F.R., Part 86) which purport to implement Title IX of the Educational Amendments of 1972, Title 20 U.S.C. §§ 1681 *et seq.* unlawfully exceed the statutory authority and legislative purposes of the sex discrimination provisions of the said Education Amendments of 1972 in the area of:

a) Subject matter coverage:

  A. As to Grove City College?

  B. As to the individual student Plaintiffs?

b) Enforcement coverage:

  A. As to Grove City College?

  B. As to individual student Plaintiffs?

4) Are HEW's regulations in this case (45 C.F.R., Part 86) unconstitutionally applied to:

a) Grove City College?

b) The individual student Plaintiffs?

5) Should Grove City College be required to execute the Assurance of Compliance?

6) Should the BEOG and/or the GSL assistance programs for the students be terminated?

## AMENDED FINDINGS OF FACT

1. Grove City College ("College") is a private co-educational institution of higher education, affiliated with the United Presbyterian Church, located in Grove City, Pennsylvania, and chartered as an educational institution under the laws of the Commonwealth of Pennsylvania.

2. Marianne Sickafuse, a resident of Pennsylvania, is a full-time student at the College, who is a recipient of a Basic Educational Opportunity Grant (BEOG) totaling $400.00, for the academic year 1978–79. Said student will be unable to continue to attend this College of her choice without the receipt of said financial assistance and will be irreparably harmed, if said grant is terminated as it relates to the College.

3. Kenneth J. Hockenberry, a resident of New Jersey, is a full-time student at the College, who is a recipient of a Basic Educational Opportunity Grant (BEOG) totaling $600.00, as well as a Guaranteed Student Loan (GSL) totaling $2,000.00, for the academic year 1978–79. Said student will be unable to continue to attend this College of his choice without the receipt of said financial assistance and will be irreparably harmed, if said grant and loan is terminated as it relates to the College.

4. Jennifer S. Smith, a resident of Pennsylvania, is a full-time student at the College, who is a recipient of a Guaranteed Student Loan (GSL) totaling $1,000.00, for the academic year 1978–79. Said student will be unable to continue to attend this College of her choice without the receipt of said financial assistance and will be irreparably harmed, if said loan is terminated as it relates to the College.

5. Victor E. Vouga, a resident of Wisconsin, is a full-time student at the College, who is a recipient of a Guaranteed Student Loan (GSL) totaling $2,500.00, for the academic year 1978–79. Said student will be unable to continue to attend this College of his choice without the receipt of said financial assistance and will be irreparably harmed, if said loan is terminated as it relates to the College.

6. Defendant, Patricia Harris, (the "Secretary") is the Secretary of the Department of Health, Education and Welfare, ("HEW") and HEW is administered under the supervision and direction of Defendant Secretary, Patricia Harris.

7. Defendant, Roma J. Stewart, successor to original Defendant, David Tatel, is the Director of the Office for Civil Rights, ("OCR") the division of HEW responsible for enforcement of Title IX. The Office for Civil Rights is administered under the supervision and direction of Defendant Roma J. Stewart.

8. Title IX of the Education Amendments of 1972, (20 U.S.C. §§ 1681 *et seq.*) provides, *inter alia*:

(a) No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . (20 U.S.C. § 1681(a)).

9. In enforcing the non-discrimination requirements of Title IX, each Federal department and agency which is empowered to terminate Federal financial assistance, *other than assistance involving contract of insurance or guaranty,* is authorized to issue rules, regulations and orders. (20 U.S.C. § 1682) Pursuant to this authority, the Secretary has issued regulations establishing certain requirements for recipients of Federal financial assistance administered under the auspices of HEW. In addition, the Secretary has designated the Director of OCR as his chief enforcement officer under Title IX. 45 C.F.R., Part 86 (1977).

10. The Secretary's regulations have defined Federal financial assistance to include funds made available for:

(i) The acquisition, construction, renovation, restoration or repair of a building or facility or any portion thereof; and

(ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity;

(2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.

(3) Provision of the services of Federal personnel.

(4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.

(5) Any other contract, agreement or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

45 C.F.R. 86.2(g)(1) (1977).

11. The Secretary's regulations have defined a recipient of Federal financial assistance as follows:

(h) "Recipient" means any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives or benefits from such assistance, including any subunit, successor, assignee or transferee thereof.

45 C.F.R. 86.2(h) (1977)

12. The Secretary requires that an Assurance of Compliance (Form 639) with Title IX be executed by all educational institutions which it considers to be recipients of Federal financial assistance, or for all institutions which are applicants for Federal financial assistance. 45 C.F.R. 86.4 (1977)

13. This Assurance of Compliance is not limited to any specific educational program or activity carried out by the recipient or applicant, but requires a contractual guarantee that the signatory educational institution will comply with all regulations issued by HEW pursuant to Title IX without limitation, including subpart E of the same. (See Exhibit "A" attached to the Complaint).

14. Currently the aforementioned regulations include, *inter alia*, those concerning employment, housing, athletics, health services, counseling and employment assistance to students. 45 C.F.R. subparts D & E (1977).

15. The College receives no Federal or State financial aid, and more particularly, receives no financial aid either from HEW or the Commonwealth of Pennsylvania, except such financial assistance that is received by the College through the BEOG program, and the GSL program.

16. One hundred forty of the College's students, including Kenneth J. Hockenberry and Marianne Sickafuse are eligible to receive Basic Educational Opportunity Grants (BEOG's) appropriated by Congress and allocated by the Secretary pursuant to 20 U.S.C. § 1070a.

17. One of the College's functions with respect to BEOG's is to certify that students applying for the grants are matriculating at the College.

18. BEOG's are distributed by the Secretary directly to students, including students such as Kenneth J. Hockenberry and Marianne Sickafuse, without participation of the College, other than to make the required certification referred to in Paragraph 17 of these Findings of Fact.

19. Three hundred forty-two of the College's current students, including Kenneth J. Hockenberry, Jennifer S. Smith and Victor E. Vouga, have obtained loans (GSL's) from private lending institutions or banks which are guaranteed by the Commonwealth of Pennsylvania. The United States, in turn, guarantees eighty (80%) per cent of the Commonwealth's obligation. The interest due upon these loans is paid directly to the private lending institutions or banks for a limited period of time by the United States through the Secretary pursuant to provisions of the Guaranteed Student Loan Program (GSL), 20 U.S.C. §§ 1071 *et seq.*

20. One of the College's functions with respect to the GSL program is to certify a student's enrollment and the College's own current schedule of educational expenses.

21. GSL funds are distributed to students, including students such as Kenneth J. Hockenberry, Jennifer S. Smith and Victor E. Vouga, without participation of the College, other than to make the required certification referred to in Paragraph 20 of these Findings of Fact.

22. During July 1976, the Secretary requested the College to execute an Assurance of Compliance, as required by 45 C.F.R. § 86.4 (1977), requiring *inter alia*, assurance that the College was operating federally-funded educational programs in compliance with Title IX and all applicable HEW regulations (45 C.F.R. Part 86) implementing Title IX.

23. The College refused to execute HEW's Assurance of Compliance on the grounds that it receives no Federal financial assistance, and that HEW regulations 45 C.F.R. subpart E is unlawfully being applied to the College.

24. Pursuant to 45 C.F.R. Parts 80, 81 and 86 (1977), the Secretary began administrative proceedings to declare the College and thereby its students, including Marianne Sickafuse, Kenneth J. Hockenberry, Jennifer S. Smith and Victor E. Vouga, ineligible to receive BEOG's, GSL's and any other Federal financial assistance administered by the Secretary while said students are attending Grove City College. However, said students *were not* made parties to said proceeding and *were not* given an opportunity to be heard.

25. Following a hearing before an Administrative Law Judge, by decision and Order dated September 18, 1978, ("Order") the College was found to be a recipient of Federal financial assistance. The decision of the Administrative Law Judge further found that ". . . there was not the slightest hint of any failure to comply with Title IX save the refusal to submit an executed Assurance of Compliance with Title IX . . .". No sex discrimination was alleged or proved at said hearing.

26. As a consequence of the "Order", the College and thereby its students, including

Marianne Sickafuse, Kenneth J. Hockenberry, Jennifer S. Smith and Victor E. Vouga, were declared ineligible to participate in either the BEOG or GSL programs, while said students are attending Grove City College.

27. Students attending the College, including Marianne Sickafuse, Kenneth J. Hockenberry, Jennifer S. Smith and Victor E. Vouga, who have already been granted funds under either the BEOG or the GSL programs, will according to the "Order", receive no further funds under either program, while said students are attending Grove City College.

28. The "Order" is a final Order of the Secretary. 45 C.F.R. § 81.104 (1977).

29. Plaintiffs have exhausted their administrative remedies. 45 C.F.R. § 81.106 (1977).

### AMENDED CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this controversy.

2. The "Order" of the Administrative Law Judge is a final Administrative Order that is subject to review by this Court.

3. The regulations issued by HEW entitled *"NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS AND ACTIVITIES RECEIVING OR BENEFITING FROM FEDERAL FINANCIAL ASSISTANCE"*, 45 C.F.R. Part 86, are final regulations and are subject to judicial review by this Court.

■ 4. The four student Plaintiffs are directly and adversely affected by the Order of the Administrative Law Judge, and to compel them to exhaust administrative compliance procedures under the exigent circumstances of this case would be an inadequate remedy and of no value in resolving the questions concerning HEW's underlying authority to promulgate and enforce compliance with the regulations involved in this case.

■ 5. Title IX of the Educational Amendments of 1972, Title 20 U.S.C. §§ 1681 *et seq.* applies to Plaintiff Grove City College and the two student Plaintiffs, Marianne Sickafuse and Kenneth J. Hockenberry by virtue of their participation in the Basic Educational Opportunity Grant Program. However, these educational grants can only be terminated after a hearing is held for both College and student recipients and only upon a showing of actual discrimination on the basis of sex in recruitment and admissions and in education programs and activities only.

■ 6. Although the Guaranteed Student Loan Program (GSL) is financial assistance that brings Grove City College under the coverage of Title IX of the Educational Amendments Act of 1972, nevertheless, HEW, pursuant to the express terms of Section 902 of Title IX, is forbidden from terminating the GSL financial assistance to the Plaintiff students as a means of enforcing the anti-sex discrimination provisions of Section 901, Title IX, because this Court finds as a matter of law, that the GSL program is a contract of guaranty. It is unlawful for HEW to terminate an education program or activity aided by financial assistance from the Federal Government which involves a contract of guaranty, in order to enforce compliance with any HEW rule or regulation pertaining to the anti-sex discrimination provisions of Title IX. Even though a GSL program is financial assistance that brings a College under the coverage of Title IX, compliance with said Title must be effectuated, if any enforcement activity is indicated, by "other means authorized by law". (See Section 902 subparagraph 2 of Title IX).

7. HEW's regulations, subpart E, 45 C.F.R. 86.51 through 86.61, inclusive, which regulations purport to address discrimination on the basis of sex in employment in educational programs and activities unlawfully exceed the statutory authority and legislative purposes of the anti-sex discrimination provisions of the Educational Amendments of 1972, and a regulation that requires the College to assure compliance with subpart E is likewise null and void and of no legal effect. 45 C.F.R. 86.4.

8. Consequently, HEW cannot properly and/or lawfully require and/or request Grove City College to execute an Assurance of Compliance with regulations that encompass subpart E, for the reason that said regulations in subpart E purport to cover employees of educational institutions who are not protected persons under Title IX.

9. HEW's regulations subparts A, B, C and D (45 C.F.R. 86.1 thru 86.43) apply to the College and also to the four students as persons who are in the class to be protected from sex discrimination under the act and as recipients of Federal financial assistance are covered by these regulations. However, all four of these Plaintiff students in any case are entitled to a hearing before their Federal financial assistance can be lawfully terminated. See Title 20 U.S.C. § 1682(1).

10. Inasmuch as Marianne Sickafuse and Kenneth J. Hockenberry did not receive a hearing as required by Section 902 of Title IX, and by the United States Constitution before their BEOG benefits were terminated, it is the conclusion of this Court that the HEW Order purporting to terminate the BEOG benefits of the student Plaintiffs, (as well as the other College students adversely affected) is declared to be void and of no legal consequence.

11. HEW's regulations (Subpart E), in this case are unlawfully applied to Grove City College because they exceed the Congressional mandate. But said regulations would not have been unconstitutional as applied to Grove City College if the Congressional authority and legislative purpose had not been exceeded by HEW's regulations.

12. Although HEW at some future time may properly demand Assurance of Compliance as to subparts C and D of Title IX regulations, HEW on the present state of this record, lawfully cannot impose any sanctions on the students or the College for the College's failure to execute the Assurance of Compliance form as it is presently formulated for the following reasons:

a) The Assurance of Compliance form as presently written, unlawfully concerns itself with discrimination on the basis of sex in the College's employment program, i.e. Subpart E of the HEW regulations, (Congress did not intend Title IX to cover this area), and the College cannot be required as a matter of law to fill out this fatally defective form.

b) Both the BEOG and the GSL program, as well as the Title IX legislation were designed to specifically protect and advance the rights of students only, and so as a matter of sound public policy in balancing and considering the interests sought to be protected and advanced by each program, the BEOG program and/or GSL program at a College should not be terminated in any case, unless and until there is a specific finding of sex discrimination at such College. Otherwise, an innocent student would be unfairly punished by the loss of his or her BEOG benefits without receiving any concomitant benefit (i. e. being freed from improper or unseemly sex discrimination) merely because as a matter of conscience the College failed to file a form. Both male and female students would be irreparably harmed by losing their financial aid in a case where there is absolutely no evidence of sex discrimination. (This reasoning applies equally to the GSL program if this Court had not held the GSL programs to be exempt from Title IX enforcement coverage).

13. HEW's regulations as applied to the four student Plaintiffs are unconstitutional and are otherwise unlawful for several reasons:

a) The four Plaintiffs were deprived of their rights to BEOG and GSL benefits without a hearing of any kind.

b) The four Plaintiffs were denied these rights to BEOG and GSL benefits without a prior determination that sex discrimination, in fact, existed.

c) Plaintiffs Hockenberry, Smith and Vouga, were deprived of their GSL rights without any warrant at all in law inasmuch as these benefits are exempted from termination by Section 902 of Title IX's express provision. (See Title 20 U.S.C. § 1682, first paragraph, which exempts from the enforcement provisions of

the Act loans to students by private banks, etc., when said loans are guaranteed by the Federal Government).

14. Inasmuch as Plaintiffs Hockenberry, Smith and Vouga did not receive a hearing as required by the Fifth Amendment to the United States Constitution before their GSL benefits were terminated, and inasmuch as it has been determined by this Court that GSL benefits are exempted from the enforcement provisions of Title IX, it is the conclusion of this Court that the HEW Order purporting to terminate the GSL benefits of the student Plaintiffs, (as well as the other College students adversely affected) is declared to be null and void and of no legal consequence.

15. A document identified as Exhibit P–1, was presented to the Court by the HEW Attorneys via letter dated November 29, 1979. This document, Exhibit P–1, is entitled "Assurance of Compliance with the Department of Health, Education and Welfare Regulation Under Title VI of the Civil Rights Act of 1964", and purports to be an agreement by Grove City College to comply with the HEW regulations under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* as of June 30, 1965. The Court concludes that this document is irrelevant to this case for the reason that whether the College is sincere or not in its claim that it now refuses to sign the Assurance of Compliance pursuant to Title IX on the basis of "conscience", is immaterial to the decision of this Court in this case.

### AMENDED DISCUSSION

This Court now will review the protections and sanctions provided by Title IX prohibiting sex discrimination in educational programs. Title 20 U.S.C. § 1681, (Section 901 of Title IX), provides in pertinent part that:

"(a) No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

Title 20 Section 1682, (Section 902 of Title IX) provides for Federal administrative enforcement by Federal departments and agencies extending Federal financial assistance to any education program by issuance of rules, regulations, or orders of general applicability, "which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance." Sanctions for non-compliance with applicable regulations are specifically set out in § 1682:

"Compliance with any requirement adopted pursuant to this action may be affected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the . . . recipient . . . and shall be limited in its affect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law . . ."

Section 1683 of Title 20 (Section 903 of Title IX), provides for judicial review of agency action taken under § 1682.

Pursuant to § 1682 (§ 902 of Title IX), HEW issued final regulations to implement this legislation, namely, 45 C.F.R. Part 86 which became effective on July 21, 1975.

As heretofore noted, the College refused to sign an Assurance of Compliance form containing a contractual obligation to abide by subparts D and E of said regulations. Upon the College's refusal to sign the form, HEW commenced procedures which ended in a final administrative Order terminating the BEOG and GSL assistance to Plaintiff students which obviously includes the termination of all of the Federal financial assistance from these programs which HEW contends was received by the College.

### IS THIS MATTER RIPE FOR A JUDICIAL CONSIDERATION BY THIS COURT?

Title 20 U.S.C. § 1683 (Title IX) provides for judicial review of final agency action,

however, HEW contends that the matter is not ripe for judicial determination. Because it is undisputed that the Administrative Law Judge issued a final Order immediately and adversely affecting the financial interests of hundreds of people, it would be difficult to find a more ripened case for judicial review.

The Plaintiff students, and many others similarly situate at the College by virtue of the administrative Order, face the immediate loss of their Federal educational grant. This aid is absolutely necessary if they are to continue as students at the College of their choice. The material facts in this case are not subject to dispute.

The pure legal issue from the Plaintiffs' point of view is whether this Court can presently determine if HEW has the legal right under Title IX and/or under the United States Constitution in the light of the undisputed facts, to cut off the Federally assisted students' BEOG and GSL programs because of the College's failure to execute a HEW form captioned "Assurance of Compliance".

The question as to the ripeness of the Plaintiffs' challenge to HEW's statutory authority undoubtedly meets both prongs of the *Abbott Laboratories'* test upon which Defendants rely. See *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). First, in determining whether a claim is appropriate for judicial decision, *Abbott Laboratories* asks whether a *purely legal issue* is presented to the Court (387 U.S. at 149). Despite HEW's efforts to construe it differently, a purely legal issue is now presented to this Court as was the case in *Abbott Laboratories*. The Court in *Abbott Laboratories* stated:

> "Both sides moved for summary judgment in the District Court, and no claim is made . . . that further administrative proceedings are contemplated . . . both sides have approached this case as one purely of congressional intent, and . . . the Government made no effort to justify the regulation in factual terms."

(See pages 148–149, 87 S.Ct. page 1516, of that Opinion)

Further, the HEW administrative determination constituted final agency action within the meaning of the Administrative Procedure Act. See 45 C.F.R. 81.104. Plaintiff College presented its challenge to HEW's jurisdiction in the administrative proceeding and has preserved that point on appeal. Consequently, there can be no doubt that the legitimacy of HEW's regulations is at issue here.

With regard to the second prong of the *Abbott Laboratories'* test, it is difficult to imagine a more concrete harm than that which would be presented should this Court decline to rule on HEW's authority to apply the regulations subparts D and E. Because of the impending aid cut-off, the College is confronted with the dilemma of either submitting to regulations which it (and several Courts) believes to be beyond the authority of HEW to enforce or it is threatened with the denial of the BEOG and GSL benefits to its students. If it chooses the former, it will have to undertake the expensive and time-consuming record-keeping, reporting and other affirmative requirements imposed by subpart E in particular, and then expose itself to further ultra vires proceedings at HEW's pleasure for any alleged sex discrimination in employment at the College, which is precisely the type of direct and immediate harm contemplated by the Supreme Court in *Gardner v. Toilet Goods Association*, 387 U.S. 167, 172–3, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967). Following HEW's suggestion, that the College simply allow the students' aid to be terminated is tantamount to asking it to give up the right to the judicial review specifically granted by § 902 of Title IX, 42 U.S.C. § 1683, and without any allegation and/or evidence that sex discrimination against students at said College exists.

More importantly, HEW's assertion regarding ripeness totally ignores the position of Plaintiff students who are the real losers should the aid cut-off occur. Any refusal of this Court to consider Plaintiff students' challenge to HEW's regulatory authority

leaves them no opportunity for judicial review in a case where, but for immediate judicial relief, they (the students) will be irreparably damaged without any corresponding social good.

The conclusion of the Supreme Court in *Abbott Laboratories* is thus appropriate here:

"Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the Plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar of some other unusual circumstance . . .".

387 U.S. at 153, 87 S.Ct. at 1518.

In *Romeo Community Schools v. HEW*, 438 F.Supp. 1021 (E.D.Mich.1977), aff'd, 600 F.2d 581 (6th Cir.) cert. denied 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed. 388 (1979), HEW also raised ripeness objections when a local school district challenged HEW's authority to promulgate and apply subpart E (employment) of its Title IX regulations. Despite the fact that administrative proceedings had not been completed and no Order had been issued cutting off aid from the school district, the Sixth Circuit ruled that the case was ripe for judicial resolution, stating,

"The only issue raised by Plaintiffs' Complaint is Defendants' authority under Title IX to promulgate the regulations contained in subpart E of 45 C.F.R. § 86.1, *et seq.*" Id. at 1028.

In another similar pre-final enforcement case challenging HEW's authority to promulgate and apply its subpart E regulations, the District Court also found HEW's ripeness argument "unpersuasive". *Brunswick School Board v. Califano*, 449 F.Supp. 866 (D.Maine 1978) *aff'd sub nom. Isleboro School Committee v. Califano*, 593 F.2d 424 (1st Cir.) cert. denied, 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 387 (1979). It reasoned as follows:

"The basic test for determining ripeness involves an examination of whether 'there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality' to warrant a judicial decision. . . . Applying this test, the propriety of judicial resolution of the question here presented is manifest. The facts are undisputed; the matter before the Court is of a strictly legal nature . . . There exists a concrete controversy between the parties which is ripe for judicial determination." 449 F.Supp. at 875 (citations omitted)

See also *Seattle University v. HEW*, 16 FEP Cases 719 (W.D.Wash.1978), *appeal pending*, No. 78–1746 (9th Cir.)

The Third Circuit cases relied on by HEW do not advance its argument and in fact, support Plaintiffs' contention. *A. O. Smith v. F.T.C.*, 530 F.2d 515 (3d Cir. 1976), held that a pre-enforcement challenge based upon the F.T.C.'s lack of power to issue certain regulations was ripe for judicial resolution. *Exxon Corp. v. F.T.C.*, 588 F.2d 895 (3d Cir. 1978), employing the *Abbott Laboratories'* test, held that a declaratory judgment action even outside of the normal review channels was appropriate to challenge agency action. Plaintiffs' case is even more compelling than those in *Smith* or *Exxon*, both of which were found ripe for judicial consideration.

This Court has jurisdiction to decide the legal issues raised in this proceeding.

### IS GROVE CITY COLLEGE BROUGHT UNDER THE COVERAGE OF TITLE IX BY VIRTUE OF ITS STUDENTS' PARTICIPATION IN THE BEOG AND GSL PROGRAMS?

■ Although it can be reasonably argued otherwise, it is this Court's opinion that Title IX of the Educational Amendments of 1972 apply to Plaintiff Grove City College because the BEOG program (Basic Educational Opportunity Grants), and the GSL program (Guaranteed Student Loan) are Federal financial assistance to the College, and of which assistance the College

itself is an ultimate recipient along with the students. See *Bob Jones University v. Johnson*, 396 F.Supp. 597 (1974) *aff'd* per curiam 529 F.2d 514 (4th Cir. 1975).

The College and two of said student Plaintiffs, namely, Marianne Sickafuse and Kenneth J. Hockenberry, along with 138 of the College's other students, participate in the BEOG program, which program this Court concludes is covered by Title IX.

The College and three of said student Plaintiffs, namely, Kenneth J. Hockenberry, Jennifer S. Smith and Victor E. Vouga, along with 342 of the College's other students participate in the GSL program which this Court also concludes is covered by Title IX.

Except for the BEOG and GSL programs above referred to, neither the College nor its students participate in any other program or activities which are funded in whole or part by the United States.

Under the BEOG program, the students who attend the College secure Federal funds appropriated by Congress for use in the program directly from the Treasurer of the United States.

Under the GSL program, the Federal Government guarantees the payment of loans and the interest due on said loans made by private lending institutions to students attending the College. Also during the course of said loan, the Government under certain circumstances, makes payments of interest to those lenders.

Upon receipt of either BEOG and/or GSL monies, the student uses his or her grant and/or loan to defray educational costs by direct payment to the College for tuition, food, housing, etc., or by payment to private vendors for such things as books, rent for off-campus housing, etc.

The question now addressed is whether the BEOG program and the GSL program are within the definition of "Federal Financial Assistance" as the term is used in § 901 of Title IX, (20 U.S.C. § 1681) to mean, in part, "any of the following, when authorized or extended under a law administered by" the Department of Health, Education and Welfare:

"1) A grant or loan of Federal financial assistance, including funds made available for:

(i) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity . . . .

5) Any other contract, agreement or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty."

Such regulations, in § 86.2(h) and (i) thereof, define "Recipient" and "Applicant", respectively, to include therein an institution 'to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives or benefits from such assistance . . .' (45 C.F.R. 86.-2(h) and 'one who submits an application, request or plan required to be approved by' an official of the Department of Health, Education and Welfare, 'or by a recipient, as a condition to becoming a recipient.' (45 C.F.R. 86.2(i)).

The College participates indirectly as the final recipient of Federal BEOG and GSL funds as a student financial aid program funded by the Department of Health, Education and Welfare. Direct grants and loans are made to the students under the BEOG and GSL programs, but the grants and loans are conditioned upon the enrollment of the student at an approved institution of higher education. (The Basic Education Opportunity Grant Program, 20 U.S.C. § 1070a, 45 C.F.R. 190.1 *et seq.*)

HEW contends that signing an Assurance of Compliance is a prerequisite to the continuation of Federal financial assistance provided under the BEOG and the GSL programs and requests that the Federal payments be terminated as to the students using said programs until the College files an Assurance of Compliance. The College defends its refusal to sign the Assurance in part, on the grounds that Federal funds

provided for student financial aid are not Federal financial assistance to an education program or activity within the meaning of Title IX, and that the regulations making such student aid programs subject to Title IX exceed HEW's authority under the Act. The College also argues that Title IX as construed and enforced by the Federal regulations is unconstitutional.

This Court finds that payments by HEW under both the BEOG and GSL programs are Federal financial assistance received by the College under the regulations. (See 45 C.F.R. 86.2(g)(1)(ii) and 86.2(g)(5). They are grants of Federal funds and/or loans guaranteed by Federal funds either extended to the College for payment to or on behalf of students admitted to the College or extended directly to students for payment to the College. The College is a "recipient" of such Federal financial assistance. (See 45 C.F.R. 86.2(h). This financial assistance helps students pay for their education at the College by defraying their costs of tuition, books, room and board and other expenses incurred in attending said institution. Since funds are provided which the College would otherwise have to supply from its own resources, the total funds available to the College to carry on its education programs and activities are increased. The Federal programs such as the BEOG program and the GSL program, also allow students to attend the College who would otherwise not have the financial means to do so, and so enlarge the population on which the College can draw for students. The College contends that the financial assistance given to the College's students under both the BEOG and GSL programs is financial aid extended directly to students and is not financial assistance to the College and so such aid is outside the purview of Title IX, since it is the student who is the "recipient" of such financial assistance and not the College.

The construction of Title IX as adopted in this Opinion, that is, with respect to whether the College is a "recipient" of Federal financial assistance and the definition of "Federal Financial Assistance" itself is authorized and persuasively supported by the case of *Bob Jones University v. Johnson*, 396 F.Supp. 597 (D.S.C.1974), *aff'd per curiam*, 529 F.2d 514 (4th Cir. 1975), a case arising under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*). The wording of § 901(a) of Title IX, 20 U.S.C. § 1681(a), is virtually identical to § 601 of Title VI, and it is undeniable that decisions construing Title VI are pertinent to the construction of Title IX.

*Bob Jones* involved the payment of veterans' benefits to veterans attending Bob Jones University. The University had a policy of denying admission to unmarried nonwhite students and providing for expulsion of students who dated members of any race other than their own. Administrative proceedings were instituted against Bob Jones University after it refused to sign an Assurance of Compliance with Title VI. Following an evidentiary hearing, all VA assistance to Bob Jones University was terminated and the right of veterans assistance was denied to veterans who applied to attend Bob Jones University in the future. 396 F.Supp. at 599–600.

The Court held that a University which enrolled students who received direct cash payments under Federal assistance programs for veterans conditioned upon the veterans' pursuit of an approved course of study at an approved educational institution, was a recipient of "Federal Financial Assistance" within the meaning of Title VI. The cash payments received by the veterans in *Bob Jones* were like the student aid extended herein in that they were utilized to meet education expenses including tuition, books, subsistence and equipment costs. The Court, in rejecting the claim that direct payments to students were not covered by Title VI, stated, 396 F.Supp. at 601–202:

"Plaintiffs argue that because the federal cash payments go directly to the veteran, it is the veteran who is the beneficiary of the VA programs, not Bob Jones. The method of payment does not determine the result; the literal language of Section 601 requires only Federal assistance—not payment—to a program or activity for Title VI to attach. The appropriate questions are (1) whether the

federally subsidized veteran participates in a 'program or activity', and, if so, (2) whether that program or activity is 'receiving Federal financial assistance'. The facts in this case project an affirmative answer as to both questions."

The Court found that the payments were not unrestricted grants, but were tied directly to the veterans' participation in an approved education activity, and therefore, *Bob Jones* was conducting a program or activity subject to Title VI. 396 F.Supp. at 602. The Court further found that the Federal cash payments did render financial assistance to *Bob Jones'* Educational Program. The Federal payments to veterans released institutional funds which would, in the absence of this Federal assistance, have been spent on students. The fact that veterans could enter educational programs because of the availability of Federal funds was also viewed as benefiting *Bob Jones* by enlarging its pool of qualified applicants. 396 F.Supp. at 602–603. The Court finally noted that the broad language of Title VI should be interpreted in the remedial context in which it was presented to Congress. Thus, narrow readings of Title VI coverage were found inappropriate. *Id.* at 604.

It can be argued that this case is different from *Bob Jones* because of the fact that payment of benefits under the G.I. Bill in *Bob Jones* was first made directly to the institution and then changed so as to be made to the student while the student aid programs in which the College participates have always involved payments directly to the student. In fact, this distinction was considered irrelevant by the *Bob Jones'* Court which stated the following, 396 F.Supp. at 603–604:

"Whether the cash payments are made to a university and thereafter distributed to eligible veterans rather than the present mode of transmittal is irrelevant, since the payments ultimately reach the same beneficiaries and the benefit to a university would be the same in either event. To argue otherwise would be to suggest that the applicability of Title VI turns on the role of a university as an exchange. It would hold, for example, that the reach of Title VI extends to the

VA Administered Vocational Rehabilitation Act, 29 U.S.C. § 31, since Federal tuition payments are made directly to the schools under the Act, but not to the other VA educational benefits statutes because payments under those statutes flow to a university through the veterans. No rational distinction with respect to Title VI coverage can be made on this basis."

In another context, the validity of tuition grants and other aid to students attending private racially segregated schools, under the Equal Protection Clause of the Constitution, the Courts have not adopted the restrictive construction of governmental financial assistance advanced by the College. Cf. e. g., *Brown v. South Carolina State Board of Education*, 296 F.Supp. 199 (D.S.C. 1968), *aff'd per curiam* 393 U.S. 222, 89 S.Ct. 449, 21 L.Ed.2d 391 (1968); *Poindexter v. Louisiana Financial Assistance Commission*, 275 F.Supp. 833 (E.D.La.1967), *aff'd per curiam* 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968); *Lee v. Macon County Board of Education*, 267 F.Supp. 458 (E.D. Ala.1967), *aff'd sub nom. Wallace v. United States*, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967); *Griffin v. State Board of Education*, 239 F.Supp. 560 (E.D.Va. 1965). In *Norwood v. Harrison*, 413 U.S. 455, 463–464, 93 S.Ct. 2804, 2809, 2810, 37 L.Ed.2d 723 (1973), a case involving the validity of a state program of lending textbooks to children attending racially segregated private schools, the Court stated:

"Free textbooks, like tuition grants directed to private school students, are a form of financial assistance inuring to the benefit of the private schools themselves [cases omitted]. An inescapable educational cost for students in both public and private schools is the expense of providing all necessary learning materials. When as here, that necessary expense is borne by the State, the economic consequence is to give aid to the enterprise; if the school engages in discriminatory practices the State by tangible aid in the form of textbooks thereby gives support to such discrimination."

See also, *Committee for Public Education and Religious Liberty v. Nyquist*, 413 U.S.

756, 784, 93 S.Ct. 2955, 2971, 37 L.Ed.2d 948 (1973), where it was held that "the effect of the aid is unmistakably to provide desired financial support for nonpublic, sectarian instructions" when New York State made tuition reimbursement payments to parents, rather than to the schools directly.

There is, of course, one significant difference between *Bob Jones* and the present case. In *Bob Jones*, discrimination was found in the admission policy of the school which precluded some blacks from ever attending the institution. Thus, all programs and activities of the institution were affected by the discrimination and the termination of tuition payments to the institution was not inconsistent with the provisions of Title VI, 42 U.S.C. § 2000d–1, which is similar to § 902, of Title IX, 20 U.S.C. § 1682, which stipulates that termination shall be limited in effect to the particular program in which noncompliance has been found.

In this case the College is coeducational, and there is no evidence of sex discrimination as discussed in other parts of this Opinion. It is the firm belief of this Court that termination of the BEOG student aid payments and/or the GSL payments is not the proper remedy for coercing the College into filing an Assurance of Compliance where there is no allegation or evidence of sex discrimination, and where the students who are receiving BEOG and GSL benefits will be punished needlessly for no good purposes.

(This Court has been greatly aided in this part of the Opinion by the cogent reasoning of the Administrative Law Judge in the case of *Hillsdale College* and *State of Michigan*, HEW Docket No. A–7)

DOES THE GSL PROGRAM OF THE COLLEGE INVOLVE "CONTRACTS OF GUARANTY" WHICH CANNOT BE TERMINATED BY HEW AS A MEANS OF ENFORCING HEW'S RULES AND REGULATIONS PERTAINING TO THE ANTI–SEX DISCRIMINATION PROVISIONS OF TITLE IX?

It is concluded by this Court that HEW has no power to terminate the College's GSL program as a means of enforcing its rules and regulations pertaining to the anti-sex discrimination provisions of Section 901 of Title IX.

The Guaranteed Student Loans are obtained from private lenders and are available to students enrolled in eligible educational institutions. An eligible educational institution is generally a public or non-profit institution of higher education (i. e., beyond secondary education), or a vocational school legally authorized by the State to provide a program of education and accredited by a recognized accrediting agency. 45 C.F.R. 177.11. Where the proper showing of financial need is made, the Government in addition to guaranteeing the loan, will also pay the interest on the loan during the time the borrower attends school and also during the period that the borrower serves in the armed forces or is unemployed or is attending a graduate or fellowship program. 45 C.F.R. 177.21(b) It can be argued that these interest payments make the program more than a contract of guaranty and bring the entire loan within the purview of the enforcement provisions of Title IX. The payments of interest, however, are not made to the student for payment to the College, nor are they made to the College. They are made to the lender. The only payment made to the student is the loan which we conclude is exempted from termination as a means of enforcing Title IX. The loan itself is disbursed from funds provided by the lender and not, as in the case of the other programs, by the Government. The interest payment appears to be a part of the contract of guaranty with the lender, and to come within the exemption set forth in Section 902 of Title IX. For concurrence, see the Administrative Proceeding initiated in the Department of Health, Education and Welfare, *In the Matter of Hillsdale College and State of Michigan*, Docket A–7. This Court concludes that the GSL program is exempted from the operation of the enforcement provisions of Section 902 of Title IX specifically by the act itself, and hence, the order of

the Administrative Law Judge terminating this program as a means of enforcing HEW regulations, is void and is of no legal effect.

## IS THE COLLEGE REQUIRED TO EXECUTE AND FILE WITH HEW, THE ASSURANCE OF COMPLIANCE?

■ Even though participation in the BEOG program and the GSL program brings the College within the substantive provisions of Section 901 of Title IX, it is the conclusion of this Court that the College is not bound to execute and file the Assurance of Compliance form for the reason that said form requires compliance with HEW's regulations subpart E, 45 C.F.R. § 86.51 through 86.61, inclusive, which regulations purport to address discrimination on the basis of sex in employment in educational programs and activities sponsored by the College. The HEW regulation, subpart E is an unlawful extension of the statutory authority and legislative purposes of the anti-sex discrimination provisions of the Educational Amendments of 1972, and regulation 45 C.F.R. § 86.4, which requires the College to assure its compliance with said unlawful regulations (subpart E) is likewise unlawful and of no legal force or effect as applied in this case.

The College should not be forced to abide by an unlawful and invalid regulation, such as, subpart E and be compelled to assure compliance therewith.

The first Circuit is *Islesboro School Committee v. HEW*, 593 F.2d 424 (1st Cir.) *cert. denied*, 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 387 (1979) has thoroughly addressed this question. We agree with the First Circuit's disposition of the issue and adopt the decision of that Court.

The First Circuit accurately noted that the plain language of § 1681(a) does not include employment discrimination, and after a thorough analysis of the legislative history, the First Circuit also determined that the intent of Congress was not to "embrace prohibitions against sex discrimination in employment" via § 1681(a). *Id.* at 428.

Because we agree with the First Circuit, and because it has addressed HEW's arguments thoroughly, we decline to add an unnecessary and essentially duplicative discussion of these issues. See also in accord the following cases:

*Romeo Community School v. HEW*, 438 F.Supp. 1021 (E.D.Mich.1977), *aff'd*, 600 F.2d 581 (6th Cir.) *cert. denied*, 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979); *Junior College District of St. Louis v. Califano*, 455 F.Supp. 1212 (E.D.Mo.1978), *aff'd*, 597 F.2d 119 (8th Cir.), *cert. denied*, 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979); *North Haven Board of Education v. Califano*, 19 FEP Cases 1505 (D.Conn.1979), *appeal pending*, No. 79–6136 (2d Cir.); *Auburn School District v. HEW*, 19 FEP Cases 1504 (D.N.H.) (1979) *appeal dismissed*, No. 79–1261 (1st Cir. 1980); *University of Toledo v. HEW*, 464 F.Supp. 693 (N.D.Ohio 1979); *Board of Education of Bowling Green v. HEW*, 19 FEP Cases 457 (N.D. Ohio 1979); *Dougherty County School System v. Califano*, 19 FEP Cases 688 (M.D.Ga. 1978), *appeal pending*, No. 78–3384 (5th Cir.); *McCarthy v. Burkholder*, 448 F.Supp. 41 (D.Kan.1978); *Seattle University v. HEW*, 16 FEP Cases 719 (W.D.Wash.1978), *appeal pending*, No. 78–1746 (9th Cir.).

Since the Assurance of Compliance requires that the College abide by all of HEW's Title IX implementing regulations, the College by signing the Assurance, would be bound to abide by subpart E, which has been totally invalidated by a number of cases hereinabove cited. For this reason alone, the College cannot be compelled to sign an Assurance to comply with an unlawful HEW regulation.

## WHAT ARE THE RIGHTS OF THE PLAINTIFF STUDENTS IN THIS CASE?

■ This Court has concluded as a matter of law, that all four of the Plaintiff students were entitled to prior notice and a hearing before their benefits could be lawfully terminated by HEW under the circumstances of this case.

There is no doubt that BEOG and GSL benefits are a matter of statutory entitle-

ment to the four student Plaintiffs. Here it is clear that these four student Plaintiffs will suffer grievous loss if these benefits are terminated. This Court can take judicial notice of the fact that a college education is of inestimable value to a person who is about to enter the labor force of this country. The affidavits of the student Plaintiffs state that they cannot continue going to the College of their choice if the BEOG and/or GSL funds are terminated. This Court can take judicial notice of the fact, and it is undisputed that it is very difficult for students to transfer from one College to another without losing both valuable time and credit for courses of study already taken. It is obvious and beyond argument that important governmental interests are advanced by encouraging our young citizenry to improve their productivity and earning capacity by obtaining some higher education. Clearly it is important to the future of our Nation to bring within the reach of our less economically favored young citizens the same opportunities that are available to the "well-to-do" to participate meaningfully in the life of our country. This Court is of the opinion that the Constitutional guarantees of due process require a hearing before a student's rights to BEOG or GSL benefits may be terminated as was attempted by HEW in this case. See *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. Further, see § 902 of Title IX, (Title 20 U.S.C. § 1682) which requires a hearing before termination of Federal financial assistance to any program can occur. Further, due process of law demands that all interested parties should be given prior notice and an opportunity to be heard, before being deprived of educational financial benefits accorded to them by law. See *Goldberg v. Kelly*, cited supra.

DID CONGRESS INTEND TO ALLOW HEW TO TERMINATE A STUDENT'S BEOG AND/OR GSL BENEFITS WITHOUT A SHOWING THAT SEX DISCRIMINATION ACTUALLY EXISTED AT THE INSTITUTION IN QUESTION?

■ The BEOG and GSL programs and the Title IX legislation were designed and enacted to specifically protect and advance the rights of students only as a matter of sound congressional public policy. In balancing and considering the interests sought to be protected and advanced by each program, the BEOG and/or GSL programs at a College should not be terminated in any case unless and until there is a specific finding of sex discrimination at such College, otherwise an innocent student would be unfairly punished by the loss of his or her BEOG or GSL benefits without receiving any concomitant benefit (i. e. being freed from the unholy effects of sex discrimination). For an example, as in the case at bar, because the College failed to file a form as a matter of conscience, both male and female students, (although totally innocent of any wrongdoing) will be irreparably harmed by losing their financial aid, and in a case where there is absolutely no evidence of sex discrimination. Certainly, Congress never intended such an absurd result. Rules of practice, regulations and procedures are devised to promote the ends of justice, not to defeat them. See *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037.

In discussing Title VI, a parallel provision dealing with racial discrimination, the Court of Appeals for the Fifth Circuit noted that Congress did not intend to terminate Federal financial assistance except as to activities which were actually discriminatory or segregated, and that Congress did not intend to harm innocent beneficiaries of programs (such as the students in the case at bar) not tainted by discriminatory practices.

The Appeals Court is quoted more specifically as follows:

"The action of HEW in the proceedings below was clearly disruptive of the legislative scheme. The legislative history of 42 U.S.C.A. § 2000d–1 (§ 602 of the Act) indicates a Congressional purpose to avoid a *punitive* as opposed to a therapeutic application of the termination power. The procedural limitations placed on the

exercise of such power were designed to insure that termination would be 'pin-point(ed) * * * to the situation where discriminatory practices prevail.' 1964 U.S.Code Cong.· & Adm.News, p. 2512. As said by Senator Long during the Senate debate:

"Proponents of the bill have continually made it clear that it is the intent of Title VI not to require wholesale cut-offs of Federal funds from all Federal programs in entire States, but instead to require a careful case-by-case application of the principle of nondiscrimination to those particular activities which are actually discriminatory or segregated." 110 Cong.Rec. 7103 (1964).

"(4) It is important to note that the purpose of limiting the termination power to 'activities which are actually discriminatory or segregated' was not for the protection of the political entity whose funds might be cut-off, but for the protection of the innocent beneficiaries of programs not tainted by discriminatory practices."

See *Board of Public Instruction of Taylor County, Florida v. Finch*, 414 F.2d 1068, 1075.

Again, in the case of *Seattle University v. HEW*, the Court was concerned about enforcing a HEW rule under Title IX that was not being used to protect the rights of the students, but would, in fact, result in harming the very persons it was designed to protect. See 16 FEP Cases 719 at 721, where the Court states:

"An analysis of 20 U.S.C. § 1682 (§ 902 of Title IX) buttresses the conclusions that (1) employees of an educational institution are not protected persons under § 1681, and (2) the prohibitory scope of § 1681 is 'program specific'. First, § 1682 grants Federal agencies like HEW, only one method of directly enforcing compliance with Title IX: . . . termination of or refusal to grant or to continue assistance under such program or activity to any recipient (found to be in non-compliance) . . . ."

"In the case of employment discrimination, this sanction is of limited enforcement value and has little or no justification, since the funds provided by HEW to create programs and activities which are designed to educate students who participate in them, a cut-off of HEW funding would necessarily *punish* the students. *Punishment of students* in the affected programs is a particularly anomalous result since the sanction is not being imposed for the purpose of enforcing their rights. An ironic result of the imposition of this sanction is that with the program's funding cut-off, the teachers and other employees who staff the program may be laid off. Since it is doubtful that Congress intended to resort to such an arbitrary enforcement measure to protect employee rights, it is similarly doubtful that Congress intended by § 1681 to protect employees at all. On the other hand, in a situation where students or other direct beneficiaries of federally funded programs are themselves the victims of discrimination in that program, the cut-off of funds has obvious justification and enforcement value."

In *Romeo Community Schools v. U. S. Department of Health*, the United States Court of Appeals for the Sixth Circuit was also concerned about causing innocent students to suffer for no good reason in a Title IX situation. The Court of Appeals declared at 600 F.2d 581, 584 (1979):

"Though the regulation by which HEW seeks to enforce Title IX's prohibition against discrimination speaks of 'other means authorized by law,' it is clear that discontinuance of federal financial assistance is the means of effecting compliance which is most available to HEW and the primary means contemplated by the enforcement provisions contained in § 1682. When this sanction is applied one result is that the students who are engaged in the federally funded activities suffer. This may be a reasonable burden for the students to bear when the object is to prevent or put an end to discrimination against students. However, it is unreasonable to assume that Congress intended

for students in a school system to be deprived of the benefits of federal funding as a means of enforcing individual rights of teachers and other school employees. This is particularly true in view of the fact that the same bill included the amendments which gave school employees direct and superior remedies for sex discrimination provided in Title VII of the 1964 Civil Rights Act. These remedies involve no loss of student benefits."

The District Court in the *Romeo* Case was very concerned about weighing the benefits the students received in the Federally financed program against the potential harm of sex discrimination when it noted at 438 F.Supp. 1021, 1032 when discussing Title IX as follows:

"This construction of § 1681 is further supported by an analysis of § 1682, which defines HEW's enforcement power under the Act. As noted previously, the only sanction permitted under § 1682 is a termination of Federal funds to the noncomplying institution. This aid termination provision, quite obviously, is of limited enforcement value. Imposition of this sanction will not necessarily compel a delinquent school system to modify or eliminate its discriminatory practices, but will necessarily penalize the students involved or enrolled in affected programs. In a situation where the students themselves are the victims of sex discrimination, it is reasonable to assume that Congress balanced the costs and benefits involved and determined that any benefit which students might derive from the education programs financed by HEW was more than outweighed by the sex discrimination in those programs. A termination of Federal aid under these circumstances has obvious justification."

A fortiori it should be apparent to men and women of reason that Congress did not intend to deprive students of their financial educational benefits where there is no evidence or even an accusation of sex discrimination at the College in question as is the case at bar.

The *Bob Jones* Case does not control this particular aspect of the case at bar. In *Bob Jones* unlike the case at bar on this specific issue, it was admitted as an undisputed fact that the Bob Jones University was openly and avowedly practicing racial discrimination. (See 396 F.Supp. 597, 599, 600, 601) Further, students and potential students were the object of racial discrimination in the *Jones* Case. In the *Jones* Case it is clear that any benefit that the student received from the Federal V.A. benefits involved in that case, was more than outweighed by the need and policy of eliminating racial discrimination.

So, in the case at bar, it is the conclusion of this Court that if sex discrimination in student programs had been actually shown to exist at Grove City College, HEW would have had the right and duty to terminate the BEOG student financial assistance program as a sanction. Unlike the situation in *Jones*, there is no evidence of any discrimination of any kind whatsoever at Grove City. Therefore, it is very clear that Congress could not have intended for HEW to draft and enforce regulations which have the direct effect of depriving hundreds of students from receiving BEOG and GSL benefits under the mantle of implementing Title IX, where there is absolutely no evidence or even an allegation of any sex discrimination of any kind whatsoever to justify punishing the very class of persons that the legislation (Title IX) was designed to protect.

As we reflect on the anomalous result that would occur here in this case if we were to accept HEW's contention that innocent students should be punished for no good or legally sufficient reason relating to the extinguishment of on-going sex discrimination, and merely because their College refused to fill out a regulatory form, we are reminded of the admonition of Alexis de-Tocqueville, in his Classic, "Democracy in America", where he warned America about the inherent potential for tyranny of the executive power. All three divisions of our system should remember constantly that the price of freedom is eternal vigilance.

## CONCLUSION

This Court is holding that both the Basic Educational Opportunity Grant (BEOG) program and the Guaranteed Student Loan (GSL) program in which the Grove City College students participate are Federal financial assistance to said recipient College which brings it, (the College), within the provision of Title IX, which Title IX protects students from sex discrimination in all College programs.

This Court is holding that both the Basic Educational Opportunity Grant (BEOG) program and the Guaranteed Student Loan (GSL) program in which the Grove City College students participate are Federal financial assistance to said recipient College which brings it, (the College), within the provision of Title IX, and which Title IX protects students from sex discrimination in all College programs.

Although the Guaranteed Student Loan (GSL) is financial assistance that brings Grove City College under the coverage of Title IX of the Educational Amendments Act of 1972, nevertheless, HEW, pursuant to the express terms of Section 902 of Title IX, is forbidden from terminating the GSL financial assistance to the Plaintiff students as a means of enforcing the anti-sex discrimination provisions of Section 901, Title IX, because this Court finds as a matter of law that the GSL program is a contract of guaranty. It is unlawful for HEW to terminate an education program or activity aided by financial assistance from the Federal Government which involves a contract of guaranty, in order to enforce compliance with any HEW rule or regulation pertaining to the anti-sex discrimination provisions of Title IX. Even though a GSL program is financial assistance that brings a College under the coverage of Title IX, compliance with said Title must be effectuated, if any enforcement activity is indicated by "other means authorized by law". (See Section 902 subparagraph 2 of Title IX).

This Court is holding that HEW may not lawfully demand that the College execute an Assurance of Compliance with Title IX (HEW Form 639) because said form presently improperly requires the College to abide by the implementing regulations of subpart E, which subpart E relates to whether there is sex discrimination in the College's employment policies. This Court is now holding that HEW by promulgating regulations subpart E, has exceeded the authority granted to it by Congress, and the subpart E regulations are void and of no legal effect.

This Court is not holding that the College is totally exempted from an obligation to execute an Assurance of Compliance under all circumstances. For an example, the College may be properly required to execute such an Assurance if all references to subpart E were excluded from the form, and if the College continues to receive Federal financial assistance of some kind, such as, the BEOG and GSL programs.

This Court is holding that HEW, under no circumstances, can use the sanction of terminating a student's Federal financial assistance (BEOG, for an example) because of the failure of the College to comply with Title IX and/or its implementing regulations unless and until there is a showing of actual sex discrimination involving student programs at the College.

A situation may arise where the BEOG program and/or GSL program is in effect and the College refuses to sign a revised and properly drafted Assurance of Compliance upon request of HEW, and in an instance where there is no available proof of actual sex discrimination in student programs at the College.

As to that hypothetical situation, this Court offers no opinion as to what other legal sanctions, if any, are available to HEW for use against the College. However, it is again repeated that the sanction of terminating BEOG and/or other student financial assistance benefits is not available to HEW in the hypothetical case just hereinbefore related because in the hypothetical case there is no evidence indicating actual sex discrimination in student programs at the College.

274

## AMENDED ORDER

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that HEW Form 639A, as drafted in July of 1976, is invalid, void and of no effect whatsoever.

IT IS FURTHER ORDERED that the Defendants, and/or their successor administrators of the statutes, laws and regulations hereinbefore and hereinafter referred to, their agents, employees and persons acting in concert with them are permanently enjoined from doing any of the following:

1. From using HEW Form 639A as the same is presently composed and drafted;

2. From terminating or refusing to grant or attempting to terminate or refusing to grant to any or all of the Plaintiffs Federal financial assistance under the Federal Basic Education Opportunity Grant Program, for any alleged non-compliance with Title IX and/or the regulations promulgated therewith unless and until sex discrimination involving either admission and recruitment and/or educational programs and educational activities as the same pertain to students only, has been properly proved at a full administrative hearing with full and adequate notice to all persons who may be immediately and adversely affected by said proceeding; and

3. From terminating at any time the Guaranteed Student Loan Program now and/or formerly in effect at Grove City College for any non-compliance and/or any alleged non-compliance with Title IX and/or the regulations promulgated therewith.